In re CORTARO WATER CO.
No. 289.

District Court, D. Arizona.
March 3, 1933.

258

C. R. McFall, of Tucson, Ariz., for trustee.

M. C. Burk, of Tucson, Ariz., for interveners.

Kingan, Darnell & Nave, of Tucson, Ariz., for creditors.

SAMES, District Judge.

On review, on the objections of the interveners to the orders made by the referee, on December 31, 1932, and January 27, 1933, designating a water rate of $14 per acre foot for the year 1933, and appointing George T. Grove appraiser on the part of the trustee, the referee has certified to this court the following questions:

"1. Does the Bankruptcy Court have jurisdiction to determine the respective title, rights and interest of the parties to this proceeding of, in and to the water, water system, and appurtenances thereto now in the possession and custody of the Trustee, and referred to in the Trustee's petition of December 31, 1932 and in the motions and objections filed by Movants thereto?

"2. If so, is such jurisdiction exclusive?

"3. Upon and from the facts stated in the said trustee's petition, the exhibits attached thereto, the stipulation of counsel made and entered into, and evidence introduced at the hearing on said petition on January 27, 1933, does it appear that the order of the Arizona Corporation Commission, attached to said petition, is binding upon this Court or the trustee herein, subsequent to the year 1932?

"4. Does the trustee, under the contracts referred to in said petition and in the manner suggested in said petition, have the right to fix a rate to be charged for water supplied under said contract for the year 1933?

"5. Does the petition of the trustee, praying for certain orders (filed hereon on December 31, 1932) state such facts which in truth would warrant this court the granting of the orders prayed for?"

The trustee has elected to perform the contracts entered into by and between the Cortaro Water Company and its predecessors and the purchasers of land susceptible of irrigation under the water system of said company, for the delivery of water on said lands. The purchasers, as the owners of said lands and holders of said contracts for the water service specified therein, assert their right to intervene in this proceeding, and object to the order of the referee entered on the 31st day of December, 1932, designating a water rate of $14 per acre foot to be charged for the year 1933 under said contracts.

It appears that the original contracts for the land and for the water service for lands in the Post project were contemporaneous, and were made by the Valley Farms Company and the Valley Farms Water Company, and the purchasers of the lands thereof. The contracts with the succeeding companies, Pima Farms Company and Cortaro Company, provide, among other covenants and conditions, that the company will furnish and deliver water for the irrigable lands of the purchasers, which the purchasers agreed to take permanently, and pay for at the rate of $5.75 per acre foot until appraisements

and valuations, as provided in the contract, are made, and a minimum charge of $5 per acre per annum upon each acre of the irrigable portions of the land, the company to pay the same rates, and to be governed by the same rules and regulations as the purchasers as to all lands owned and cultivated by it. Within a reasonable time a valuation of all of the property of the company is required to be made by an appraisal by three water engineers, one to be designated by the company, one by a majority of the purchasers, and one by the two so selected, such valuation to remain in effect until a new valuation, not oftener than once a year, as the parties may require, and on such valuation the company is entitled to earn an average yearly net profit of 6 per cent. over and above all costs, losses, and expenses. Before the first of each year the company is required to announce its rates and charges for the ensuing year, based on the last previous valuation or appraisal, and post said rates and charges. The sale of the land, as to the irrigable portions thereof, shall be subject to the terms of the contract. The price and liability for the water service is made a continuing first charge and lien upon the land, with provisions for the enforcement thereof, and rights to water under the contract are not transferable, except with the land, and shall run with and perpetually bind the land during the life of the contract, which, at the option of the company, shall remain in force and effect as to the purchaser and his grantee, as the latter complies with the terms thereof. Provisions are made for facilities for testing of wells, for the delivery of water, for well sites and rights of way over the purchaser's land, and for interruptions in the water service. The company is permitted to sell and otherwise dispose of water from its wells, canals, and other waterways to the full capacity thereof, and, in case of insufficient supply, purchaser's service to be prorated with the number of irrigable acres to be furnished with water. The purchaser may not declare the contract invalid or annulled, but, if damaged by the company's violation of the contract, shall have recourse for damages in the courts. The company reserves the right to transfer all of the property and water contracts to a water or irrigation company or district when one may be organized under the laws of Arizona, in which event the contract shall have the same force and effect as if made with such succeeding company. The contract further specifies as follows: "That if at any time it shall be determined that the Arizona Corporation Commission possesses jurisdiction over the company as a common carrier, public service corporation or otherwise, then, in that event, the company and purchaser shall not be held to such of their obligations under this contract as said Corporation Commission shall otherwise order, but both the company and purchaser shall be bound by all such orders as shall become final and binding, and no liability shall exist on the part of the company or purchaser, one to the other, for or on account of any damage to the purchaser or the company by reason of any order, whether such order shall be the result of an application of the company, purchaser, or other person, or based upon the voluntary action of said Commission, or upon any other matter or condition."

It does not appear that any valuation or appraisal of the water company's property has heretofore been made and determined, as provided in the contract.

In August, 1931, the Arizona Corporation Commission, on its own motion, on complaints against the charges imposed by the water company, entered upon an investigation for the purpose of determining just and reasonable rates for the water service of the Cortaro Water Company. Hearings were had thereon, in which the water company participated, and on March 30, 1932, and more than four months before the petition for the voluntary bankruptcy of the company was filed, said commission ordered that the rate for 1932 be fixed at $5.50 per acre foot, and that the proceedings remain open for further orders as may be deemed necessary. From the order of the Corporation Commission, the water company appealed to the superior court of Maricopa county, in which court said appeal is now pending.

Interveners contend that they are the owners of the land for which the company, or its predecessors, contemporaneously with purchase of the land from the land company, agreed to furnish water for the irrigable portions thereof, and that they are therefore the holders of a property right or interest unaffected by the bankruptcy proceedings, and that the water service under the contract is subject to the Constitution and laws of Arizona, and said order of the Corporation Commission.

The trustee and intervening creditors of the Cortaro Water Company maintain that the bankruptcy court, having custody of the res of the bankrupt's estate, has exclusive jurisdiction for the determination of all controversies relative thereto; that such jurisdiction cannot be surrendered to any other

tribunal; that the Corporation Commission never had possession of the res, and is and was without jurisdiction; that its order is expressly limited to the year 1932; that the order is unconstitutional and void and without jurisdiction, because the company is not a public utility company.

The Corporation Commission was created by article XV, § 1, of the Constitution of Arizona.

Section 2 of said article provides that: " * * * All corporations, other than municipal engaged * * * in furnishing water for irrigation * * * or other public purposes * * * shall be deemed public service corporations."

Section 3 of said article grants to the commission full power to prescribe just and reasonable rates and charges to be made and collected by public service corporations for service rendered, and to make rules, regulations, and orders by which such corporation shall be governed in doing business.

Chapter 15, Revised Code of Arizona 1928 (section 665 et seq.), provides for the organization of the Corporation Commission, and the regulation of public service corporations.

Section 673 of said chapter provides: " 'Water system' includes all property used in connection with the diversion, development, storage, distribution and sale, of water for beneficial uses, for compensation."

Section 689 provides: "Whenever the commission shall find that the rates * * * demanded or collected by any public service corporation for any service or product or commodity * * * or that the rules, regulations, practices, or contracts are unjust, discriminatory or preferential, illegal or insufficient, the commission shall determine and fix the same by order as hereinafter provided."

Section 717 provides that no such corporation shall raise any rate, fare, toll, rental, or change or alter any contract so as to result in any increase whatsoever, except upon a showing before the commission, and by finding by the commission that such increase is justified.

Section 718 provides that the final orders of the commission are not subject to collateral attack, and are conclusive.

Section 719 provides that the orders of the commission may not be stayed by an application for a rehearing, and section 720 provides that, except as otherwise provided, orders of the commission shall remain in force pending the decision of the court.

■ Article XV of the Constitution of Arizona, and the Arizona Public Service Corporation Act (Revised Statutes of Arizona 1913 [Civ. Code] title 9, chapter 11 [paragraph 2277 et seq.]), providing that the term "public service corporation" shall include "water corporation," paragraph 2278(z), Arizona Statutes 1913 (Civ. Code), that water corporations shall include every corporation owning, controlling, operating, or managing any water system for compensation within this state, paragraph 2278(x) Id., and that the term "water system" shall include all property used in the supplying or distribution of water for municipal, domestic, or other beneficial use, paragraph 2278(w) Id., were considered by the Supreme Court of the United States in Van Dyke et al. v. Geary et al., 244 U. S. 39, 37 S. Ct. 483, 61 L. Ed. 973. The owner of the water system, among other objections to jurisdiction of the Arizona Corporation Commission to regulate and fix the rates, contended that a water system established for the purpose of furnishing water to purchasers of lots from the town-site company was treated as a public water system, and that the use is not public because water is furnished only to particular individuals in fulfillment of private contracts made with the purchasers of town-site lots. The court says that the water owner pumps the water on her own land, stores it in tanks on her own land, and thence conducts it through pipes all on her own land, and delivers it to purchasers at the boundary line between her and their properties; and that lot purchasers bought with the understanding that they might purchase water from her water system at rates fixed by her—are all facts of no significance; for the character and extent of the use make it public; and, since the service is a public one, the rates are subject to regulation.

The Supreme Court of Arizona in its opinion in Pima Farms Co. v. Proctor, 30 Ariz. 96-113, 245 P. 369, 375, affirming Judge Darnell of the Pima county superior court, says: " * * * It appears the defendant [Pima Farms Company] is a public service corporation, already actually engaged in the delivery of water to the larger part of the 8,000 acres of land now under cultivation."

■ The rate-fixing regulation of the Corporation Commission over the company became a part of the contract, whether expressed therein or not. Where the law authorizes the regulation of service rendered the public, such law becomes a part of and controls the contracts providing for the public service. 13 C. J. p. 561, § 523; State ex rel. Ellis v.

Tampa Water Works Co., 56 Fla. 858, 47 So. 358, 19 L. R. A. (N. S.) 183.

The commission's order fixing the rate was made more than four months prior to the bankruptcy of the water company. The trustee contends that this order was not effective as a judgment which the bankruptcy court recognizes as a valid adjudication. In the case of Moffat Tunnel Imp. Dist. v. Denver & S. L. Ry. Co. (C. C. A.) 45 F.(2d) 715, 717–732, the power of the Moffat Tunnel Commission, created under the laws of Colorado to construct, lease, and regulate the use of the Moffat tunnel, to impose certain provisions in its lease with the railroad company, was questioned. The court holds: "But in any event, the law is clear that the determination of an administrative commission is conclusive on the courts, if it acts within its statutory powers, and its action is neither fraudulent nor arbitrary."

During the year 1932, and up to the date of the voluntary petition, the Cortaro Water Company was delivering water to the interveners and others under the contracts, at the rate fixed by the Corporation Commission. The trustee now elects to perform the contracts, but proposes, regardless of the order of the commission, to fix a rate of $14 per acre foot on a valuation estimated by him, including a net income of 6 per cent. over and above the expenses of operation, maintenance, depreciation, obsolescence, taxes, renewals, and replacements, losses and expenses. It was optional with the trustee to assume the executory contracts of the bankrupt, as he deems for the best interest of the estate, and, in case he assumes them, his rights and liabilities are the same as those of the bankrupt. 7 C. J. p. 226, § 34. If the trustee elects to assume such contracts, he is required to take it cum onere, as the bankrupt enjoyed it, subject to all its provisions and conditions, in the same "plight" and condition that the bankrupt held it. Atchison, etc., R. Co. v. Hurley (C. C. A.) 153 F. 503, affirmed 213 U. S. 126, 29 S. Ct. 466, 53 L. Ed. 729. The trustee, in laying claim to property, is bound by the terms of the bankrupt's contract as construed by the state law, no matter how onerous, unprofitable, or otherwise they may be—save and except, always, as the same may be in fraud of creditors' rights or void as to creditors or be in contravention of statute. Remington on Bankruptcy, vol. 4, § 1412.

In accordance with the changes made by the amendment of 1910 (36 Stat. 838), the correct statement of the rights and title which the trustee takes as successor of the bankrupt's rights and title (Remington, § 1409, vol. 4, p. 84) would be as follows: "The trustee succeeds to the bankrupt's title and stands in his shoes and has the bankrupt's rights and remedies, and also takes the property, in cases unaffected by any fraud of the bankrupt towards creditors, in the same plight and condition in which the bankrupt held it and subject to all equities and rights imposed upon it in the hands of the bankrupt, except where there has been some transfer or encumbrance of the property or seizure of it by legal process, void against some creditor under State law to whose rights the trustee is subrogated, or void as against the trustee by some positive provision of the Bankruptcy Act, but as to the property in the custody or coming into the custody of the bankruptcy court, takes it in such plight and condition only to the extent that some creditor would have taken it had such creditor held a lien by legal or equitable proceedings thereon and, as to the property not in the custody of the bankruptcy court, held an unsatisfied execution."

Since the trustee has determined to adopt the contracts, it is incumbent upon him to comply with all the provisions of the same, including the order of the Corporation Commission fixing the rate to be charged for water until such time as said rate may be reviewed and changed on the pending appeal from the order of the commission, or on further hearing before the commission.

The interveners claim that the rate proposed by the trustee is prohibitive, ruinous, and will occasion the loss of their lands. It is the position of the trustee that the company can furnish water at the commission's rate only at great loss to the bankrupt estate, and that its failure to perform the contracts will subject the bankrupt estate to damage suits, and jeopardize its water rights and the value of the project. The court cannot make a new contract for the parties, or lend effect to certain provisions of the existing contracts, and ignore others. The court cannot disregard the terms of these contracts, and put into effect a rate at variance with the terms of the latter, or substitute obligations not assumed by the purchasers.

In view of the foregoing on the authorities referred to above, and on the record presented in this matter, the questions submitted by the referee are answered as follows:

(1) The bankruptcy court has jurisdiction to determine the respective rights, title, and interest of the parties to this proceeding of, in, and to the water, water system, and

appurtenances thereto now in the possession and custody of the trustee, and referred to in the trustee's petition of December 31, 1932, and in the motions and objections filed by movants thereto, and, in the exercise of such jurisdiction, the court will recognize and lend effect to the provisions of the Constitution and laws of the state of Arizona under which said rights, title, and interest may have arisen, in determining the character and validity thereof.

(2) Such jurisdiction is exclusive in the bankruptcy court.

(3) Upon and from the facts stated in said trustee's petition, the exhibits attached thereto, and stipulations of counsel, and the evidence introduced at the hearing on January 27, 1933, and the fact that the trustee has elected to adopt and carry out the various contracts set forth in his said petition, the order of the Corporation Commission of the state of Arizona attached to said petition is binding upon the bankruptcy court and the trustee herein subsequent to the year 1932, until changed as provided in the contracts and the statutes of Arizona.

(4) For the reasons stated in answer to question 3, supra, the trustee does not have the right under the contracts referred to in said petition and in the manner suggested therein to fix a rate to be charged for water supplied under said contracts for the year 1933.

(5) The petition of the trustee, praying for certain orders (filed herein on December 31, 1932), does not state such facts which would warrant the bankruptcy court in granting the orders prayed for.

The orders of the referee made on December 31, 1932, authorizing the trustee to post a rate of $14 per acre foot for supplying water under the various contracts involved in this hearing, and the appointment of George T. Grove as an appraiser to represent the trustee in the appraisement of the property of the bankrupt for the purpose of fixing a water rate to be charged, are hereby vacated and set aside.