# VAN DYKE ET AL. *v.* GEARY ET AL., MEMBERS OF THE CORPORATION COMMISSION OF THE STATE OF ARIZONA, ET AL.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ARIZONA.

No. 52. Argued March 23, 1917.—Decided May 7, 1917.

In a case governed by Judicial Code, § 266, where the jurisdiction of the District Court is invoked upon constitutional questions, this court, upon appeal from an order denying preliminary injunction, has jurisdiction to review the whole case. *Louisville & Nashville R. R. Co.* v. *Garrett*, 231 U. S. 298.

Extension of the power of the Corporation Commission to the regulation of water systems belonging to individuals, as provided in the Public Service Corporation Act of Arizona (Rev. Stats., 1913, Title 9, c. XI), is permitted by the Constitution of Arizona, Art. XV.

In the absence of an authoritative decision of the Supreme Court of the State to the contrary, a contemporaneous construction of the state constitution by an act of the legislature which is reasonable in itself and designed to accomplish the obvious purpose of the constitutional provision in question should be followed by this court.

Art. IV, pt. 2, § 13, of the Arizona Constitution requiring that acts of the legislature shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title, is sufficiently complied with by the Arizona Public Service Corporation Act, *supra*, although that act applies to individuals as well as corporations, while its title refers to corporations and makes no mention of individuals.

One who uses his property in supplying a large community with water thereby clothes such property with a public interest and subjects the business to public regulation.

Where it is conceded that the purpose of a water system is to supply water to the residents and inhabitants of a particular townsite, though not to outsiders or the public generally, the mere fact that the lots of the townsite were originally purchased from the owner of the water system with the oral understanding that water could be secured from that system for use on the lots has no tendency to support the claim that the system furnishes water only to particular individuals

in pursuance of private contracts made with such lot purchasers and is hence devoted exclusively to private use.

The fact that service is limited to a part of a town does not prevent a water system from being a public utility.

Water rates fixed by a state commission upon a basis of a net annual return of 10% of the value of the property employed, allowing an annual depreciation charge of 3½%, *Held* not confiscatory, the valuation of the water system and estimate of operating expenses having been made by the state commission and concurred in by the District Court after careful inquiry by both, the evidence presented to this court being conflicting, and the District Court having appropriately protected the complaining party by providing that application for injunction may be renewed after one year if the rates appear too low.

218 Fed. Rep. 111, affirmed.

THE case is stated in the opinion.

*Mr. William C. Prentiss,* with whom *Mr. F. C. Jacobs* was on the brief, for appellants.

*Mr. Samuel Herrick,* with whom *Mr. Wiley E. Jones,* Attorney General of the State of Arizona, and *Mr. R. Wm. Kramer* and *Mr. Geo. W. Harben,* Assistant Attorneys General of the State of Arizona, were on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

In 1909 Ida A. Van Dyke and her husband organized a corporation under the name of the Miami Townsite Company to acquire a tract in Gila County, Arizona, and establish a town thereon. A large part of Miami is now located on that land. In order to supply residents and others thereon with water for domestic, commercial and fire purposes, the Van Dykes introduced a water system which developed rapidly. In October, 1913, the Arizona Corporation Commission, a public service com-

mission with the usual powers of regulation, instituted
before itself a proceeding to have the rates charged by the
water system declared excessive, and to have reasonable
rates established. The Van Dykes, who were duly served,
filed a "plea in bar"; alleged that the plant was the in-
dividual property of Ida A. Van Dyke; that the business
was operated by her with her husband as manager, and
not by a corporation; and denied not only the validity
of the order but also the jurisdiction of the commission
over them. The objection to the jurisdiction was over-
ruled; and the commission proceeded to a hearing on the
merits, at which the Van Dykes offered no evidence.
On May 1, 1914, after an elaborate report, an order was
entered greatly reducing the water rates. The Van Dykes
promptly filed a motion for a rehearing, which was denied.
Thereupon they applied to the commission to stay the
operation of the order pending proceedings for review in
the state court. This application also was denied. Then
they filed, in the District Court of the United States for
the District of Arizona, this suit against the members of
the commission, the Attorney General of the State and
the county attorney to enjoin the enforcement of the order
and the prosecution for penalties for failure to observe the
same; and to have the order itself cancelled.

Both plaintiffs and defendants are citizens and res-
idents of Arizona. Jurisdiction of the federal court was
invoked solely on the ground that the order of the com-
mission, if enforced, would deprive plaintiffs of their
property in violation of the Fourteenth Amendment; and
that the penalties prescribed by the Arizona statute for
failure to obey the order are so severe as to prevent resort
to the remedies therein provided for testing in the state
courts the validity of the orders. An interlocutory in-
junction was applied for; and the case was heard before
three judges under § 266 of the Judicial Code. The juris-
diction of the court was sustained under the rule declared

in *Ex parte Young*, 209 U. S. 123; but the court refused relief against the order reducing water rates, saying:

"The evidence submitted by the complainants does not afford this Court a satisfactory basis on which to adjudicate the question of the value of the property used as a water plant, and therefore the Court cannot say that the rates prescribed by the Corporation Commission are confiscatory, and there is no basis on which an order could be made declaring them illegal. If hereafter it shall appear that under actual operation of the plant under these rates, the return allowed by such Corporation Commission operates as a confiscation of the property of complainant, Ida A. Van Dyke, she may, at the expiration of one year, again present her evidence to the Court and obtain appropriate relief on the facts then presented.

"The Court will retain jurisdiction of the case with permission to complainant, Ida A. Van Dyke, if so advised, after the expiration of one year, to renew her application for an injunction against the rates established by the Corporation Commission as confiscatory. In the meantime the rates established will remain in force."

From an order entered in accordance with this opinion the Van Dykes appealed; and this court has jurisdiction to review the whole case. *Louisville & Nashville R. R. Co. v. Garrett*, 231 U. S. 298.

The errors alleged are, in substance, as follows:

*First:* That the Arizona Constitution and Public Service Corporation Act were construed and applied to subject property owned and operated by a natural person to regulation, as a public service corporation.

*Second:* That a water system established for the purpose of furnishing water only to purchasers of lots from the Miami Townsite Company was treated as a public water system.

*Third:* That the rates fixed are confiscatory.

These alleged errors will be considered in their order.

1. *Whether the Arizona Corporation Commission had jurisdiction to regulate a water system owned by an individual.*

Arizona was admitted as a State February 14, 1912; and on that date its constitution, which had been adopted December 9, 1910, took effect. By Article XV it created (§ 1) a corporation commission with full power to establish reasonable rates in the public services; and declared (§ 2) that corporations engaged in furnishing water "shall be deemed public service corporations." The Arizona Public Service Corporation Act (Ariz. Rev. Stats. 1913, Tit. 9, c. XI) provides that the term "public service corporation" shall include "water corporation," § 2278 (z); that "water corporation" shall include "every corporation or *person* . . . owning, controlling, operating, or managing any water system for compensation within this State," § 2278 (x); that the term "person" includes an individual, § 2278 (d); and that the term "water system" shall include all property used in the supply or distribution of water "for municipal, domestic, or other beneficial use," § 2278 (w). It is clear that the legislature intended that the powers of the Corporation Commission should extend to plants owned and operated by individuals, and that the language used by it was adequate to express that intent. But it is insisted that provisions of the Arizona Constitution forbid the grant of such a power by the legislature; and the question resolves itself into this: Are the terms "corporation" and "public service corporation" in Article XV of the constitution, used in the limited sense of incorporated companies, or do they include all public utilities both incorporated and unincorporated and whether they be firms or individuals?

Article XV, entitled "The Corporation Commission," consists of nineteen sections,[1] and confers broad powers of

---

[1] Included are the following:

"Section 1. A Corporation Commission is hereby created to be com-

regulation.  The character of the service, that is, whether
it is public or private, and not the character of the owner-
ship, determines ordinarily the scope of the power of
regulation.  The need of such regulation and the manner
of exercising it are the same, whether a public utility is
incorporated or not; and the purpose of a public service
commission could easily be frustrated if concerns owned by
individuals were excluded from its operation.  The Dis-
trict Court accordingly declined to give a technical mean-

---

posed of three persons, who shall be elected at the general election to
be held under the provisions of the enabling Act approved June 20,
1910, and whose term of office shall be co-terminous with that of the
Governor of the State elected at the same time, and who shall maintain
their chief office, and reside, at the State Capital.  .  .  .

"Sec. 2.  All corporations other than municipal engaged in carrying
persons or property for hire; or in furnishing gas, oil, or electricity for
light, fuel, or power; or in furnishing water for irrigation, fire protection,
or other public purposes; or in furnishing, for profit, hot or cold air or
steam for heating or cooling purposes; or in transmitting messages or
furnishing public telegraph or telephone service, and all corporations
other than municipal, operating as common carriers, shall be deemed
public service corporations.

"Sec. 3.  The Corporation Commission shall have full power to, and
shall, prescribe just and reasonable classifications to be used, and just
and reasonable rates and charges to be made and collected, by public
service corporations within the State for service rendered therein, and
make reasonable rules, regulations, and orders, by which such corpora-
tions shall be governed in the transaction of business within the State,
and may prescribe the forms of contracts and the systems of keeping
accounts to be used by such corporations in transacting such business,
and make and enforce reasonable rules, regulations, and orders for the
convenience, comfort, and safety, and the preservation of the health,
of the employees and patrons of such corporations; Provided, that in-
corporated cities and towns may be authorized by law to exercise
supervision over public service corporations doing business therein,
including the regulation of rates and charges to be made and collected
by such corporations: Provided further, That classifications, rates,
charges, rules, regulations, orders, and forms or systems prescribed or
made by said Corporation Commission may from time to time be
amended or repealed by such Commission."

ing to the term "public service corporation," and interpreted it in the broad popular sense as embracing all public utilities. That construction is in line with numerous decisions holding that statutes imposing certain liabilities on "railroad corporations" embrace all railroads whether individually or corporately owned.[1]

It is contended that Article XIV, entitled "Corporations other than Municipal," renders this liberal construction of Article XV inadmissible. Section 1, of Article XIV defines "'corporation,' as used in this article . . . to include all associations and joint stock companies having any powers or privileges of corporations not possessed by individuals or co-partnerships"; and § 16 provides that the records of "all public service corporations" shall at all times be subject to the inquisitorial powers of the State. It is argued that the term "public service corporation," thus excluding individually-owned utilities, could hardly have a different meaning in the very next article of the constitution. But the answer is that Article XIV deals only with the organization, incorporation, management and powers of technical corporations, and the definition therein of "corporation" is for that reason expressly limited by the phrase *"as used in this Article."* This is significant and is entirely in harmony with the view that the term as used in some other article having a wholly different purpose, should bear a different and broader construction.

Furthermore, the powers of the Arizona Corporation Commission are not limited to those expressly granted by the constitution. Section 6 of Article XV authorizes the legislature to "enlarge the powers and extend the duties of the Corporation Commission"; and the legislature, by

---

[1] *Union Pacific Ry. Co.* v. *De Busk,* 12 Colorado, 294, 304; *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Lightheiser,* 168 Indiana, 438; *Schus* v. *Powers-Simpson Co.,* 85 Minnesota, 447, 450–451; *Lewis* v. *Northern Pacific Ry. Co.,* 36 Montana, 207, 218.

defining "water corporation" to include "persons" own-
ing a water utility, clearly extends the powers of the
commission to individually-owned concerns. So that even
if the commission was not originally vested by the con-
stitution with power over utilities owned by individuals,
it now has that power directly by legislative enactment.
In other words the constitution prescribed a certain min-
imum of power with which the commission was intrusted;
it authorized the legislature to enlarge from time to time
the scope of the commission's duties; and the legislature
extended them to water concerns owned by individuals.

This construction of the Arizona Constitution by the
District Court is in harmony with the contemporaneous
construction evidenced by the Public Service Corpora-
tion Act (*supra*) enacted at the first session of its legisla-
ture. In the absence of an authoritative decision of the
Arizona Supreme Court to the contrary, this legislative
construction, reasonable in itself and designed to accom-
plish the obvious purpose of the constitutional provision,
ought not to be set aside by this court. *Louisville & Nash-
ville R. R. Co.* v. *Garrett*, 231 U. S. 298, 305.

Appellants contend also that even if the legislature had
power to extend the jurisdiction of the Corporation Com-
mission to water systems owned and operated by in-
dividuals, the Public Service Corporation Act was, in this
respect, invalid under Article IV, Part 2, § 13 of the Ar-
izona Constitution, because this purpose was not expressed
in the title of that act.[1] Constitutional provisions re-

---

[1] The Arizona Constitution (Art. IV, Part 2, § 13) provides that:

"Every Act shall embrace but one subject and matters properly
connected therewith, which subject shall be expressed in the title; but
if any subject shall be embraced in an Act which shall not be expressed
in the title, such Act shall be void only as to so much thereof as shall
not be embraced in the title."

The Act is entitled:

"An Act relating to Public Service Corporations, Providing for the

quiring the subject of legislative acts to be embraced in the title are not to be given a strained and narrow construction for the purpose of nullifying legislation. The "subject," as expressed in the title, is the regulation of "public service corporations"; and the provision in the act that "public service corporations" shall include "persons" owning a public utility is a matter obviously connected therewith.

2. *Whether the Van Dyke Water System is a private business.*

The Van Dyke system appears to be the only water supply of the inhabitants of the original town of Miami (not including the "additions"). The number of water takers is not shown. But it appears that the large consumers who used meters numbered, at the time of the commission's investigation, 675, yielding a revenue of $11,378.10; and that the number of small takers must have been much larger, since the revenue derived from the flat rates was $14,517.35. "Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large." *Munn* v. *Illinois*, 94 U. S. 113, 126. The property here in question was devoted by its owners to supplying a large community with a prime necessity of life. That Mrs. Van Dyke pumps the water on her own land, stores it in tanks on her own land and thence conducts it through pipes all upon her own land (the strips reserved in the streets for conduits being owned by her), and delivers it to purchasers at the boundary line between her and their properties; and that lot purchasers bought with the understanding that they might purchase water from Mrs. Van Dyke's water system at rates fixed by her—are

Regulation of the Same, Fixing penalties for the Violation Thereof, and Repealing Certain Acts; with an Emergency Clause."

all facts of no significance; for the character and extent of the use make it public; and since the service is a public one the rates are subject to regulation.

Counsel contend that the use is not public, because water is furnished only to particular individuals in fulfillment of private contracts made with the purchasers of townsite lots. But there is nothing in the record to indicate that such is the fact. Purchasers seem to have bought merely with the oral understanding that water could be secured from the Van Dyke system. Affidavits filed by appellants state expressly that their water system is operated "for the purpose of supplying the residents and inhabitants of said Miami Townsite with water, and not for the purpose of supplying persons outside of said townsite, or the public generally with water." The offer thus is to supply all the "inhabitants" within the given area; and that of course includes sub-vendees, tenants and others with whom the Van Dykes had no contract relations. The fact that the service is limited to a part of the town of Miami does not prevent the water system from being a public utility. See *Del Mar Water &c. Co.* v. *Eshleman,* 167 California, 666, 681–3.

## 3. *Whether the rates fixed are confiscatory.*

The commission decided that the net return to the owner upon the value of the property employed should be at the rate of at least ten per cent., after allowing an annual depreciation charge of three and one-half per cent. Water rates prescribed on this basis obviously cannot be held confiscatory unless either the valuation placed upon the property used was grossly inadequate or the cost of operation greatly underestimated. These elements are largely matters of fact and opinion, as to which both the commission and the District Court, after careful examination, found against the appellants. The case is presented to us on contradictory affidavits dealing with the items

of value which go to make up the water system.   We cannot say "that it was impossible for a fair-minded board to come to the result which was reached."  *San Diego Land & Town Co.* v. *Jasper*, 189 U. S. 439, 442; *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 18.  And the provision in the order of the District Court by which it retained jurisdiction of the case with permission to Mrs. Van Dyke to renew her application for an injunction after one year, if the rates fixed appeared to be confiscatory, afforded her appropriate protection.

The decree of the District Court is

*Affirmed.*

MR. JUSTICE MCREYNOLDS dissents.