170 P.2d 845

GARVEY, Secretary of State, v. TREW.

No. 4889.

Supreme Court of Arizona.

June 28, 1946.

John L. Sullivan, Atty. Gen., and John W. Rood and Burr Sutter, Asst. Attys. Gen., for appellant.

Stockton & Karam, of Phœnix, for appellee.

MORGAN, Judge.

At the First Special Session of the 17th Legislature, Chapter 11, House Bill 20, was enacted by a two-thirds vote, but without the emergency clause. It was approved by the governor on the 3rd day of October, 1945. Briefly, the bill directs the Arizona Corporation Commission to ascertain the fair value of the property of all public service corporations in the state furnishing gas or electricity "for the purpose of establishing a basis for rate-making purposes." The commission is directed and authorized to arrange with and secure the co-operation of the Federal Power Commission to assist it in the investigation. Affected public service corporations are required, upon notice by the commission, to file inventories and other data. Upon the completion of the property valuation investigation, the commission is directed to enter appropriate decrees, etc., "which shall thereupon become binding and effective and shall be enforced as to all persons concerned." The sum of $50,000 is appropriated to the commission for the payment of the expenses of the Federal Power Commission "in making the property investigation authorized by this act."

Within the time provided by the Constitution for the filing of referendum petitions, there were filed with the secretary of state petitions signed by the requisite number of qualified electors. The secretary, acting under the advice of the attorney general, declined to accept the petitions for official filing and advised the proponents of the referendum measure that he would not certify it for printing on the ballot nor include any reference to the measure in the

publicity pamphlets. The grounds of the refusal were that the act being "for the support and maintenance of the corporation commission, a department of the state government created by the Constitution of Arizona, in the discharge of its constitutional duties," was not subject to the referendum.

Upon the complaint and application of appellee, as plaintiff, an alternative writ of mandamus was issued by the superior court, requiring the appellant, the defendant, to file the referendum petition or show cause for failure to do so. Upon issue joined and after hearing, the writ was made permanent. From the final order and judgment of the court, the defendant appealed.

Of the various matters called to our attention, we think it necessary to consider only two questions: First, is Chapter 11 an act to provide an appropriation "for the support and maintenance" of the corporation commission? Second, if Chap. 11 is such an appropriation measure, must it be passed by a two-thirds vote of the members of the legislature and contain an emergency section to exempt it from the provisions of the referendum? If either of these questions be answered in the affirmative, the judgment of the trial court must be sustained. On the other hand, if the act is an appropriation measure for the support and maintenance of a department of the state government, and does not require the emergency section, the secretary of state could not officially accept the referendum petitions for filing, and the judgment of the

lower court must be set aside and the writ quashed.

The corporation commission is one of the departments of the state government created by the Constitution. Art. 15, Const. of Arizona; Phœnix Ry. Co. v. Lount, 21 Ariz. 289, 187 P. 933. It has very broad powers conferred upon it by the Constitution. In section 3, it is given full power to and is required to prescribe just and reasonable classifications, rates and charges to be made and collected by public service corporations within the state. It has power to inspect and investigate public service corporations doing business within the state (section 4). The legislature may enlarge its power and extend its duties (section 6). Section 12 specifically provides that charges made for services by public service corporations shall be just and reasonable. Section 14 mandatorily directs the commission to "ascertain the fair value of the property within the state of every public service corporation."

It will be observed from the foregoing constitutional powers that the legislature, by Chapter 11, conferred no new rights on the commission that it did not already possess. Nor are the powers of the commission limited to those expressly granted. We have held that the powers conferred by the article are merely the minimum, and that under the constitution, the commission may exercise all powers which may be necessary or essential in connection with the performance of its du–

ties. Menderson v. Phoenix, 51 Ariz. 280, 76 P.2d 321; Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973. As stated, under the provisions of section 14, the commission is under a duty to ascertain the fair value of the property of every public service corporation doing business in the state. State v. Tucson Gas, Elec. Light & P. Co., 15 Ariz. 294, 138 P. 781. It is not limited as to agencies it may employ for this purpose. Obviously, it has the constitutional power, without any direction from the legislature, to enter into contracts with the Federal Power Commission for co-operation under the Federal Power Act. 16 U.S.C.A. § 797(c), Federal Power Act. The legislature may enlarge its powers and extend its duties but may not decrease its powers. Van Dyke v. Geary, supra; Menderson v. Phoenix, supra; Corporation Commission of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443; State v. Tucson Gas, etc. Co., supra. Only through the granting or withholding of appropriations does the legislature have control over the commission in so far as the exercise of its constitutional duties are concerned.

From what has been said, it will be seen that Chapter 11 operates only as an appropriation measure. Its purpose is to provide the commission with funds to carry on its constitutional duties to ascertain "the fair value of the property within the state" of public service corporations furnishing gas and electricity for profit. In that re-spect the appropriation is for "the support and maintenance of the departments of the state government", within the meaning of Art. 4, Part 1, section 1(3), Const. of Arizona.

Does the fact that this appropriation was earmarked for a special purpose, to-wit, the payment of the expenses of the Federal Power Commission, compel us to treat the appropriation as one not for the support and maintenance of the corporation commission? If so, every appropriation coming within the budget act, which must specify the various expenditures for which the appropriation is made, would have to be considered as not for the support and maintenance of a department of government or a state institution, as the case might be. The provisions of the Constitution, Art. 4, Pt. 1, sec. 1(3), supra, that acts "to provide appropriations for the support and maintenance of the departments of the state and of state institutions" are exempt from the referendum would be almost wholly nullified. Patently, the test of whether the appropriation is for the support and maintenance is not the earmarking for a specific purpose, but rather are the funds appropriated for use in carrying out the objects and functions of the department. Here, the legislature in its wisdom saw fit to direct the commission to take advantage of the services of the Federal Power Commission to the end that a fair valuation might be had of all property by the corporation commission. It is not for us to say that the leg-

islature did not act properly. Indeed, it would seem only fair both to the corporation commission and the public service companies that as a basis for rate making the proper value of the properties be ascertained. The legislature, the executive, the corporation commission and the courts, if cases should be brought up, are entitled to know the true facts. It may be that some utility rates are too low and others too high. No reason is apparent to us why the legislature, the direct representative of the people, does not have the right to make an appropriation for this purpose. If the valuation fixed is unfair, if the resulting rate is unsatisfactory or confiscatory, an appeal may be had (Art. 15, sec. 17, Const.) and relief afforded. It is not uncommon for the state to take advantage of the services of federal agencies. An example of this is the appropriation for expenditures to be made in co-operation with the United States Bureau of Reclamation, in making a water resources survey. Chap. 6, First Special Session, 16th Legislature, Laws 1944.

We conclude that the appropriation in Chap. 11 is for the support and maintenance of the corporation commission, and comes within the provisions of Art. 4, Pt. 1, sec. 1(3), supra.

We now proceed to consider the second question: Is an appropriation for the support and maintenance of a state department an emergency measure which must "be approved by the affirmative votes of two-thirds of the members elected to each house of the legislature, * * * and also approved by the governor" before it may be exempt from the referendum. This court, in Warner v. White, 39 Ariz. 203, 4 P.2d 1000, 1004, considered the provisions of Art. 4, Pt. 1, sec. 1(3), in determining whether the first fourteen sections of Chapter 103, Sessions Laws of the 10th Legislature were subject to the referendum. The sections of the act against which the referendum petition was filed in that case created a new department to conduct a state tax survey, and made an appropriation therefor. It is apparent from the reading of the measure that the object of that law was the creation of a new department to conduct a state tax survey. The appropriation was incidental to the main provisions or objects of the act. The situation was wholly dissimilar to that existing in the present case. Here the only effect or new features of the measure sought to be referred is the appropriation itself, the commission being already vested with the power and the duty to perform the acts mentioned in the law. In the Warner case it was very properly held that the measure was not one for the support and maintenance of a state department, but for the creation of a new department, and, not being passed with the emergency, it was referable. We quote:

"But if it were true that the Constitution excepted from the operation of the referendum ipso facto 'laws * * * for

the support and maintenance of the departments of the State Government and State Institutions,' it is plain that Senate Bill 116 is not a law within the meaning of this language. Reference is here had to the departments of the state government in existence when the appropriation is made, for in the very nature of things the people could not be deprived of their right to approve or reject a law creating a department of the state government and prescribing its functions merely because it provides in addition the funds for the purpose of carrying out its terms in case it should finally come into being. The act was not passed for the purpose of appropriating money but to bring about a survey of the taxable property of the state, something that could not be accomplished without funds to defray the expense of it, and the right of the people to say whether they think such legislation is wise or unwise, desirable or undesirable, is beyond question. To hold that an act may not be referred because incidentally it provides the funds to accomplish the end it seeks would have the effect of practically nullifying the referendum provision of the Constitution, because many of the measures passed carry appropriations of this character, and it would be an easy matter to include such a provision in others and bring about the same result."

The issues in that case as presented to the court dealt mainly with the question of whether the law was for the support and maintenance of a department of state. Since it was not a support measure, the court was not constrained to consider that portion of section 1(3) relating to the passage of emergency measures. It would seem that any expressions of the court concerning the requirements relating to emergency measures were beyond the issues and in the nature of obiter dicta. If, as it obviously appears, the law was not one for the support and maintenance of a state department, no binding adjudication could be made with respect to the necessity or non-necessity of a two-thirds vote and the enactment of the emergency section, which is required where emergency measures are involved to except them from the operation of the referendum. Only two classes of laws are excepted, those pertaining to the public peace, health or safety, or for the support and maintenance of the departments of the state government, and state institutions. Since in the Warner case the law involved did not fall within either of these classes, there was no necessity of considering the proviso of the section relating to emergency measures. Notwithstanding this, the court held that the appropriation measure for the support of a state department was subject to the referendum unless the legislature appended the emergency section, and passed the measure by a two-thirds vote of each house.

It is urged by appellant here that the Warner case is stare decisis only on the question of whether the measure or-

dered referred was or was not a support measure. He cites the rule on dicta in 21 C.J.S., Courts, § 190, "A dictum is an opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication." Granow v. Adler, 24 Ariz. 53, 206 P. 590, 593, is also called to our attention. This case held that a rule approved in a prior decision not necessitated by the issues was dictum, and need not be followed "on the principle of stare decisis."

Regardless of all this, however, we feel that the prior opinion of the court, in view of the fact that the whole of section 1(3) was being considered and the emergency provision was relied upon, though not argued at length by appellant, it should not in so far as it applies to the present case be treated as obiter dicta. We think the opinion in the Warner case should be considered as coming under the doctrine of stare decisis. The construction of the constitutional provision here involved should be followed unless it appears that the views expressed and the ruling made were manifestly wrong. Where previous decisions involve only questions of public interest and which do not affect private rights (the case here) the doctrine of stare decisis is greatly relaxed. State ex rel. LaPrade, Attorney General v. Cox, 43 Ariz. 174, 30 P.2d 825; Brickhouse v. Hill, 167 Ark. 513, 268 S.W. 865; In re Todd, 208 Ind. 168, 193 N.E. 865; Cooley on Const. Limitations, 8th Ed., 120.

This court has not hesitated to review its prior opinions upon questions of public interest and to overrule the former holdings. It was said in State ex rel. LaPrade v. Cox, supra [43 Ariz. 174, 30 P.2d 829]:

"While, under our judicial system, all courts have a strong respect for precedent, this respect is a reasonable one which balks at the perpetuation of error, and the doctrine of stare decisis should not prevail when a departure therefrom is necessary to avoid the perpetuation of pernicious error.

\* \* \* \* \* \*

"In this case, however, there are several reasons why we should not hesitate to set aside the holding in Cox v. Stults, supra (42 Ariz. 1, 21 P.2d 914). In the first place, the question does not directly involve private rights, and no rights are likely to have, as yet, grown up by reason of that decision, so that an altering of the rule laid down therein will not affect property rights already accrued. \* \* \* In the third place, it is utterly unsupported by any authority, directly or indirectly. \* \* \*

"For the foregoing reasons, reluctant as we are to depart from the rule of stare decisis, we think this is one of the cases which require such a procedure \* \* \*."

Again, in the late case of Crane Co. v. Arizona State Tax Comm., 63 Ariz. 426, 163 P.2d 656, 659, we said:

"We, therefore, face the present inquiry with a ruling of this court that contractors are not ultimate consumers and that the

purchase and placement of tangible personal property in structures by contractors, under contracts for others, constitute a resale of such property. It is true that we have a right to overrule such a holding, and it is our duty to do so if cogent reason exists for the abolishment of the announced rule. An examination of the opinions of other courts on this question will be helpful in determining whether the views expressed in the Pleasant Hasler case [Moore v. Pleasant Hasler Const. Co., 50 Ariz. 317, 72 P.2d 573] should remain as the guide to the construction of the statute."

Since there is grave doubt. as to the correctness of the construction given to section 1(3), supra, in the Warner case, we feel it our duty to re-examine the question. In order that the references may be understandable, we quote subdiv. (3) of sec. 1, Art. 4, Pt. 1, in full:

"The second of these reserved powers is the Referendum. Under this power the legislature, or five per centum of the qualified electors, may order the submission to the people at the polls of any measure, or item, section, or part of any measure, enacted by the legislature, except laws immediately necessary for the preservation of the public peace, health, or safety, or for the support and maintenance of the departments of the state government and state institutions; but to allow opportunity for referendum petitions, no act passed by the legislature shall be operative for ninety days after the close of the session of the legislature enacting such measure, except such as require earlier operation to preserve the public peace, health, or safety, or to provide appropriations for the support and maintenance of the departments of the state and of state institutions; Provided, that no such emergency measure shall be considered passed by the legislature unless it shall state in a separate section why it is necessary that it shall become immediately operative, and shall be approved by the affirmative votes of two-thirds of the members elected to each house of the legislature, taken by roll call of ayes and nays, and also approved by the governor; and should such measure be vetoed by the governor, it shall not become a law unless it shall be approved by the votes of three-fourths of the members elected to each house of the legislature, taken by roll call of ayes and nays."

 We are satisfied that the framers of the constitution and the people who voted for its adoption understood and intended that appropriations for the support and maintenance of the departments of the state government and state institutions were not to be subject to the referendum. The departments of the state and its various institutions come into existence only through the majority vote of the people, or of the legislature. Where a new department of state is set up, or a new institution provided by the legislature, its creation is subject to the will of the people under the referendum unless the law is passed by a two-thirds vote, and is an emergency meas-

ure. The principal departments of the state government, including the corporation commission, were set up in the constitution by the people themselves. It is not logical to assume that the creators of these departments and institutions set up for the purpose of conducting government, intended that their functions might be disrupted for long periods by a small minority. We cannot believe that the framers of the constitution, or the voters who adopted it, intended to make it possible for a small percentage of the voters to stop the functions of the various departments of government by cutting off their appropriations through the operation of the referendum. This does not make sense.

■ It appears to be conceded by the appellee that general appropriations are support and maintenance measures under the constitutional provision, but that the support and maintenance clause does not apply to special appropriations. The constitutional exemption, however, makes no distinction between general appropriation or special appropriation bills. If an appropriation is for the support and maintenance of a department or institution, it is exempt. Conceding this to be true, appellee urges that under the Warner decision an appropriation can be made exempt only by a two-thirds vote, and the appending of the emergency section. In other words, the contention is that even though Chap. 11, supra, is an appropriation for the support and maintenance of the corporation commis-

sion, it is subject to the referendum petition because the bill was not passed with the emergency section. If an appropriation measure, whether general or special, has to be adopted by a two-thirds vote of the legislature, and with the emergency clause or section, then every appropriation bill not so passed may be held in abeyance by a small minority of the voters, to-wit, five per cent, and the will of the majority be defeated. One-third of the legislature, and not a majority, would in fact control. We take it that it often happens that a two-thirds vote of the legislature cannot be secured even for the passage of a general appropriation bill. In such event, five per cent of the people could stop all functions of government by filing referendum petitions against appropriation bills. The will of the majority would be defeated until such time as a vote could be taken at a general election. Thus, for instance, under these circumstances all work on the highways could be stopped for many months; the function of every department of state or institution depending upon legislative appropriation could be interrupted. The state university, and other schools depending upon appropriations, would have to close under these circumstances. We would have the situation of a small minority stopping all processes of government.

If the constitutional provisions clearly give this power to the minority, they must be enforced. Do the provisions adopted disclose this intention? It is first provided in the section which we have quoted that cer-

tain emergency measures immediately necessary for the preservation of the public health or safety shall be excepted; and second, those for the support and maintenance of the departments of the state government and state institutions. Again in the section it is specifically provided that no act passed shall be operative until ninety days after the close of the session "except such as require earlier operation to preserve the public peace, health or safety, or to provide appropriations for the support and maintenance of the departments of the state and of the state institutions."

Reading this section as a whole, it clearly appears that two separate and distinct classes of acts are exempt from the referendum. First, measures immediately necessary for the preservation of the public peace, health or safety; second, measures for the support and maintenance of governmental departments and institutions. These classes of acts are wholly unrelated. The first are police measures and only that character of such police acts as are immediately necessary to preserve the public peace, health or safety. The second relates wholly to appropriations for support of government function. It is obvious that the proviso that no such emergency measure shall be considered passed by the legislature refers only to the police power acts of a character immediately necessary to preserve the peace, etc. Appropriations may or may not be immediately required. Any other construction violates all the rules which require that the evident intent of the framers or authors as expressed must be the cardinal principle of construction. The words "immediately necessary" as used in the first sentence do not apply to the support and maintenance clause which is placed in the disjunctive. State ex rel. Blakeslee v. Clausen, 85 Wash. 260, 148 P. 28, Ann.Cas. 1916B, 810. It will be noted that the second class of measures exempted are joined disjunctively with the first class. The qualifying words "immediately necessary", therefore, are to be applied only to the first class of laws, but not to the support and maintenance measures since the word "or" rather than the word "and" is used. In 59 C.J. 986, sec. 584, Statutes, the rule of construction with respect to disjunctive words is said to be "When, and only when, necessary to effectuate the obvious intention of the legislature, conjunctive words may be construed as disjunctive, and vice-versa." Considering all of the provisions of the constitution relating to the referendum, there is obviously no intention to use "or" other than as a disjunctive.

What we have said also applies to the following provision, "No act passed by the legislature shall be operative for ninety days after the close of the session of the legislature enacting such measure, except such as require earlier operation to preserve the public peace, health, or safety, or to provide appropriations for the support and maintenance of the departments of the state and of state institutions." It seems clear

to us that the words "earlier operation" mentioned in the first class of acts, public peace, etc., have no application to measures providing for appropriations. It will be noticed that this is also joined in the disjunctive. It is, therefore, our view that measures to provide appropriations for support and maintenance are exempt from the referendum.

The later provision of the act, "Provided, that no such emergency shall be considered passed by the legislature unless it shall state in a separate section why it is necessary that it shall become immediately operative", etc., refers strictly to emergency measures, to-wit, those pertaining to public peace, health or safety, and do not include appropriation measures.

After all, the test is, What did the electors who voted for the Constitution understand and intend? Certainly, they could not have believed that the emergency proviso covered appropriations. The word "emergency" has a well understood meaning. It is defined and understood as: "An unforeseen combination of circumstances which calls for immediate action." Webster's New. Int. Dict., 2d ed. Judges and law writers have repeatedly defined the meaning of the word "emergency" when used in statutes. These definitions are aptly summarized in Black's Law Dict., 3d Ed., 654:

"A sudden unexpected happening; an unforeseen occurrence or condition; specifically, a perplexing contingency or complication of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity.

"A relatively permanent condition of insufficiency of service or facilities resulting in social disturbance or distress."

Bearing in mind that only appropriations for the support and maintenance of state departments and institutions, and those only in existence are exempt, it clearly appears that such appropriations cannot be classed as emergency measures. When there is an existing law under which state departments or institutions have been created, with certain duties to perform which require annual or other appropriations, it cannot be said that an appropriation to carry on its functions is an emergency measure. Such appropriations are foreseen. Ordinarily, no immediate action is required. General appropriation bills particularly are passed long prior to the necessity for use of the funds. There is no sudden or unexpected event which, in common parlance, is understood as creating an emergency. To hold that the voters of the territory of Arizona understood and intended that appropriations for the support and maintenance of existing institutions under the clear terms of the exemption come within the referendum feature, would be a gross insult to their intelligence. It seems apparent that had the framers of the Constitution intended that appropriations of the character we are dis-

cussing, were to be subject to the referendum unless passed by two-thirds, etc., they would have inserted in the proviso, after the clause "that no such emergency measure" *or appropriation* shall be considered passed, etc. Twice before they had carefully inserted the emergency classes of measures, and also the support and maintenance measures in such a manner as to disclose that they considered these as two separate classes.

Viewing the whole section and assaying the words and phrases by their ordinary meaning, we are forced to the conclusion that support and maintenance appropriations for existing state departments and institutions are not subject to the referendum. It is to be understood that such appropriations are exempt only when made in support and maintenance of the existing functions of the department or institution. If the appropriation is incidental to a measure, giving new or additional power or functions to a department or institution, and for the support and maintenance of such new power or functions, it is subject to the referendum unless passed as an emergency measure. The secretary of state, therefore, properly refused to file the referendum petitions.

The judgment of the lower court is reversed and the cause remanded with directions to enter judgment on behalf of the defendant.

La PRADE, J., concurs.

STANFORD, Chief Justice (specially concurring).

The matter under consideration in the case of Warner v. White, referred to by the foregoing opinion, had to do with various things besides the making of an appropriation. The controversy in that case was over Chapter 103, being Senate Bill No. 116 of the Laws of 1931, and the law, among other things, called for a full and complete economic, fiscal and tax valuation survey of the developed resources of the State of Arizona and all of the property and classes of property both tangible and intangible, within the state. Section 2 of the Act, or law referred to, states:

"The survey herein provided for shall be conducted and administered by and under the direction of a special tax survey commission, hereinafter referred to as the tax survey commission consisting of three leading and representative citizens of the state to be appointed by the governor, one of said commissioners shall be a representative of the agriculture interests of the state, one a representative of the mining interests of the state, and one a representative of the business interests of the state."

The sum of money appropriated was $250,000.

The matter under consideration in Warner v. White, supra, was twofold. In the instant case there is but one matter and that is the matter of appropriation only. In Warner v. White this court said:

"* * * The act was not passed for the purpose of appropriating money but to bring about a survey of the taxable property of the state, something that could not be accomplished without funds to defray the expenses of it, and the right of the people to say whether they think such legislation is wise or unwise, desirable or undesirable, is beyond question. * * *"

The case of State ex rel. Reiter v. Hinkle, 161 Wash. 652, 297 P. 1071, 1073, is a referendum case also. Therein the court said:

"In the later case of State ex rel. Blakeslee v. Clausen, supra, this court granted an application for a writ of mandamus requiring the state auditor to issue warrants in payment of claims on account of material furnished state departments. In granting the writ, it was held that a section of an appropriation bill appropriating money for the improvement of state highways, which section contained an emergency clause, was valid, and that the same did not violate the Seventh Amendment to our Constitution. After quoting from the Brislawn case [State ex rel. Brislawn v. Meath, 84 Wash. 302, 147 P. 11, 12] the paragraph thereof above quoted, referring to the 'true rule,' the opinion continues:

" 'The intent and purpose of the people, as gathered from the words of the Constitution and the circumstances attending the adoption of the seventh amendment, impels the holding that the people intended to use the word "support" in its fullest sense. When so considered, "support" includes appropriations for current expenses, maintenance, upkeep, continuation of existing functions, as well as appropriations for such new buildings and conveniences as may be necessary to meet the needs and requirements of the state in relation to its existing institutions.' "

Our constitution on the subject of referendum, in part, is as follows:

"* * * except such as require earlier operation to preserve the public peace, health, or safety, or to provide appropriations for the support and maintenance of the departments of the state and of state institutions * * *."

The referendum clause of the Constitution from the State of Washington from which the above quotation in the case of State ex rel. Reiter v. Hinkle was taken, reads, in part, as follows:

"* * * except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, * * *."

The corporation commission was created by the Constitution of the state and given the exclusive power to govern rates. To carry out its duties, to perform its delegated authority, an appropriation is as essential as the appropriation made by the legislature to pay its own expenses.

From the foregoing it is accordingly my belief that the referendum clause of our

Constitution, where it mentions "support and maintenance" has not a pinched meaning, but a broad meaning indeed ample for us to say that the appropriation under consideration herein is not one subject to be referred to the people of our state.