IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RESPECT THE PROMISE IN OPPOSITION TO R-14-02-NEIGHBORS FOR
A BETTER GLENDALE, an Arizona political committee; NO MORE BAD
DEALS FOR GLENDALE IN OPPOSITION TO R-14-03-NEIGHBORS FOR
A BETTER GLENDALE, an Arizona political committee, GARY HIRSCH,
an individual,

*Plaintiffs/Appellants*

*v.*

PAM HANNA, in her official capacity as City Clerk of the City of Glendale,
Arizona; CITY OF GLENDALE, ARIZONA, a municipal corporation,

*Defendants/Appellees.*

No. 1 CA-CV 14-0801
FILED 9-18-2015

Appeal from the Superior Court in Maricopa County
No. CV2014-011334
The Honorable Katherine Cooper, Judge

**AFFIRMED**

COUNSEL

Osborn Maledon, P.A., Phoenix
By Mary O'Grady, John L. Blanchard
*Counsel for Plaintiffs/Appellants*

Coppersmith Brockelman PLC, Phoenix
By Keith Beauchamp, Roopali H. Desai, Melissa A. Soliz
*Counsel for Defendants/Appellees*

---

### OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

---

**B R O W N**, Judge:

¶1        Gary Hirsch, as chairman of two neighborhood political committees, appeals the superior court's denial of his application for a writ of mandamus requiring the Glendale City Clerk to accept and file referendum petitions challenging the Glendale City Council's approval of a resolution and related settlement agreement.  Hirsch argues the City Council's acts were referable and the City Clerk lacked discretion to refuse to follow the statutory requirements for processing referendum petitions. Because we conclude that neither the resolution nor the settlement agreement were legislative acts, they are not subject to the power of referendum.  We therefore affirm the court's order.

### BACKGROUND

¶2        In November 2001, the City Council adopted Ordinance No. 2229, which purported to annex a parcel of land contiguous to the City's border, known as Area 137.  After an Area 137 landowner filed a petition to set aside the annexation, however, the City Council adopted Ordinance No. 2258, which abandoned the annexation.  Approximately one year later, the Tohono O'odham Nation ("the Nation") purchased 134 acres of land ("the Property") located within Area 137.

¶3        In 2009, the Nation applied to the Bureau of Indian Affairs to have the Property taken in trust by the federal government, which would allow the Nation to conduct gaming activity on the Property.  In response to the Nation's application, the City Council passed Resolution No. 4246, "voicing" its opposition to the Nation's application and corresponding efforts to establish gaming on the Property.  The resolution also directed the Glendale City Manager and City Attorney "to take all reasonable, necessary and prudent actions to oppose" the Nation's application.  The City Council further adopted Ordinance No. 2688, which stated that Ordinance No. 2258 "was ineffective and a nullity" and declared that Area 137 was indeed annexed as of December 27, 2001.  The Nation, however, successfully

challenged the City's attempted annexation. *Tohono O'odham Nation v. City of Glendale*, 227 Ariz. 113 (App. 2011).

¶4 In July 2010, the Secretary of the Department of the Interior approved the Nation's application and accepted the Property in trust under the federal Gila Bend Indian Reservation Lands Replacement Act, 100 Stat. 1798 (1986). The City, and other entities opposing the gaming facility, challenged the Secretary's decision in federal district court, which upheld the decision. The City appealed and the Ninth Circuit Court of Appeals vacated the district court's ruling in part and remanded, directing the Secretary to consider whether the land was "within the corporate limits of any city or town." *Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1150-51 (9th Cir. 2013). Additional litigation ensued, stemming from the legislature's adoption of a statute in 2010 to facilitate annexation of land on a county island when an application to have the land taken into federal trust is pending. The Nation sued the State of Arizona and the City, challenging the constitutionality of the new law. The federal district court struck down the law, prompting the State and the City to appeal.

¶5 Meanwhile, Representative Trent Franks of Arizona introduced in Congress the Keep the Promise Act of 2013 ("the Franks Bill"), designed to prevent the construction of new casinos on trust lands within the Phoenix metropolitan area. On March 25, 2014, the City Council passed Resolution No. 4783, declaring its opposition to the Franks Bill. Interested parties attempted to refer the resolution to voters, but the City Clerk rejected the referendum petitions, explaining the matter was administrative and therefore not referable. The City Clerk's decision was not challenged.

¶6 On July 3, 2014, the Secretary determined the Property was not within the corporate limits of any city or town and therefore took the Property in trust. On July 15, 2014, the City Council approved Resolution No. 4828, which repealed Resolution No. 4246 (opposing the Nation's efforts to establish gaming on the Property) and recognized that City staff had been directed to commence negotiations with the Nation. No referendum petitions were filed challenging Resolution No. 4828.

¶7 On August 14, 2014, the City Council adopted Resolution No. 4840. To provide context, the resolution recounted the passage of Resolution 4246 (annexation resolution), state and federal litigation, the introduction of the Franks Bill, passage of Resolution No. 4783 (opposing the Franks Bill), the final decision of the Secretary, passage of unchallenged Resolution No. 4828 (repealing opposition to gaming on the Property), and

prior settlement negotiations between the City and the Nation. The resolution then (1) reaffirmed the City Council's "support" for gaming on the Property; (2) declared it was in the best interests of the City to enter into a settlement agreement ("the Settlement Agreement") with the Nation; (3) directed the mayor to execute the Settlement Agreement on the City's behalf; (4) directed the city attorney to withdraw from ongoing litigation; (5) declared support for the Secretary's decision to take the Property in trust; (6) declared support of the Nation's gaming project; (7) urged the State not to challenge the Secretary's decision and to withdraw from ongoing litigation; (8) urged the State's congressional delegation to oppose any legislation aimed at limiting the Nation's ability to conduct gaming on the Property; and (9) reaffirmed Resolution No. 4783 (opposing the Franks Bill).

¶8 On the same day, the City, the Nation, and the Tohono O'odham Gaming Enterprise entered into the Settlement Agreement, which recognized that the City had undertaken steps to oppose the Nation's proposed casino project by instituting litigation and pursuing state and federal legislation. The Settlement Agreement thus confirmed the parties' intentions to settle all disputes relating to the Property, including the dismissal of pending litigation. The Settlement Agreement also provided that the Nation would (1) fund all *on-site* infrastructure improvements and reimburse the City for costs it incurs for *off-site* infrastructure improvements; (2) make a one-time payment of $500,000 to the City within ten days of execution of the agreement; and (3) make various payments to the City and to the Glendale Convention and Visitors Bureau totaling more than $25 million over the next twenty years.

¶9 On August 25, 2014, the City was dismissed from the only remaining litigation, the appeal pending in the Ninth Circuit. Soon thereafter, Hirsch submitted separate petitions for referendum to the City Clerk challenging Resolution No. 4840 and the Settlement Agreement. The City Clerk rejected the petitions, explaining that both the Resolution and the Settlement Agreement were administrative, rather than legislative in nature, and therefore not subject to referendum.

¶10 Following the City Clerk's rejection, Hirsch applied for a writ of mandamus in the superior court to compel the City Clerk to process and file the referendum petitions. Following briefing and oral argument, the court entered judgment denying Hirsch's application, finding that neither Resolution No. 4840 nor approval of the Settlement Agreement were legislative acts subject to referendum. The court reasoned that (1) the provisions of Resolution No. 4840 unrelated to the Settlement Agreement

4

do not "qualify as legislation;" and (2) the City's decision to settle its disputes with the Nation by entering the Settlement Agreement was an administrative act. Finally, the court held that the City Clerk had the authority to reject Hirsch's referendum petitions because they failed to meet the constitutional limitation that only legislative acts are referable. Hirsch timely appealed.

## DISCUSSION

### I. Constitutional Right of Referendum

¶11 Hirsch contends Resolution No. 4840 and the Settlement Agreement created new a policy and are therefore legislative acts subject to referendum. Whether a particular action taken by the governing body of a municipality is subject to the referendum power is a question we review de novo. *See Redelsperger v. City of Avondale*, 207 Ariz. 430, 432, ¶ 7 (App. 2004) (reviewing de novo the trial court's finding that a city council acted in a legislative capacity, and thus subject to referendum, when it approved a conditional use permit).

¶12 The Arizona Constitution reserves the power of referendum to the people, Ariz. Const. art. 4, pt. 1, § 1, and thus "permits qualified electors to circulate petitions and refer to a popular vote *legislation [that] has been enacted* by their elected representatives." *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 488 (1991) (emphasis added). As relevant here, the constitution reserves the referendum power "to the qualified electors of every incorporated city, town, and county as to all local, city, town, or county matters on which such incorporated cities, towns, and counties are or shall be empowered by general laws to *legislate*." Ariz. Const. art. 4, pt. 1, § 1(8) (emphasis added).

¶13 Municipal corporations "act in several capacities: legislative, executive, administrative, and quasi-judicial." *Wennerstrom*, 169 Ariz. at 488. Voters may challenge only legislative actions via referendum because permitting "referenda on executive and administrative actions would hamper the efficient administration of local governments." *Id*. In *Wennerstrom*, our supreme court adopted a general test for evaluating whether a particular act is legislative, and thus referable, or administrative, and not referable:

> Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. In this connection an

5

ordinance which shows an intent to form a permanent rule of government until repealed is one of permanent operation.

. . . .

The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it. *Similarly, an act or resolution constituting a declaration of public purpose and making provision for ways and means of its accomplishment is generally legislative as distinguished from an act or resolution which merely carries out the policy or purpose already declared by the legislative body.*

169 Ariz. at 489 (quoting 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55 at 266 (3d rev. ed. 1989) ("McQuillin")). As noted by the supreme court, the test is "far easier stated than applied," and the "plethora of cases" applying the test are "often irreconcilable." *Wennerstrom*, 169 Ariz. at 489.

**¶14** In this case, the referendum power is applicable only if the City Council's passage of Resolution No. 4840 and approval of the Settlement Agreement were *legislative* acts as contemplated by the Arizona Constitution. *See Stop Exploiting Taxpayers v. Jones*, 211 Ariz. 576, 578, ¶ 9 (App. 2005) ("Although the constitutional right to referendum is broadly construed, only legislative acts are subject to referendum.") (internal citation omitted). Because different considerations are involved in ascertaining the legal nature of Resolution No. 4840 and the Settlement Agreement, we address them separately.

### A. Resolution 4840

**¶15** As a threshold matter, we analyze whether the provisions of Resolution No. 4840 that are unrelated to the Settlement Agreement constitute "legislation." The power of referendum applies only to matters on which the governing body is empowered "to legislate." *See* Ariz. Const. art. 4, pt. 1, § 1(8). "Legislation, whether by the people or the legislature, is a definite, specific act or resolution." *Saggio v. Connelly*, 147 Ariz. 240, 241 (1985). "[L]egislatures do not enact general principles," rather, to be considered legislation, a "measure must enact something." *Id.*; *see also*

Black's Law Dictionary 1037-38 (10th ed. 2009) (defining legislation as "[t]o make or enact law" and the "attempt to control (something) by legislation"). Thus, only substantive acts pertaining to subject matter over which the legislative body has authority to regulate constitute legislation. *See* McQuillin, § 16.52 (noting that the right to a referendum is "restricted to legislation within the power of the municipality to enact or adopt"). As such, the reference to "actions" set forth in *Wennerstrom* presupposes that a legislative body has adopted a substantive measure addressing a matter over which the legislative body has the power to regulate. *See Wennerstrom*, 169 Ariz. at 489.

**¶16**        As a general matter, "courts have jurisdiction and authority to determine whether the proposed initiative or referendum measure is of the type authorized to be placed on the ballot." McQuillin § 16.52. In *Winkle v. City of Tucson*, 190 Ariz. 413, 416 (1997), the supreme court explained that voter initiatives, and by extension referenda challenging the actions of municipal corporations, may be rejected as *procedurally* defective on two bases: (1) structural noncompliance with the statutory requirements, such as a petition lacking the requisite number of signatures; and (2) the text of the initiative, or the challenged measure, "fails to enact anything." Thus, measures setting forth the "thought processes" of a municipal corporation and the give-and-take of the political process, devoid of any substantive enactment, are not subject to referendum. *Wennerstrom*, 169 Ariz. at 491.

**¶17**        Applying these principles to Resolution No. 4840, and putting aside for the moment the provisions relating to approval of the Settlement Agreement, the remaining provisions: (1) affirm or acknowledge prior resolutions; (2) express support for the Nation's casino project; and (3) urge the State and its representatives to withdraw their opposition to the project. Mere expressions of support, and encouraging other entities or individuals to share the same viewpoint, are not substantive measures. Rather than an enactment, Resolution No. 4840 reflects the City Council's position on a matter over which it has no legislative authority to regulate. Accordingly, the council's expressions of support for the gaming project and related "urging" that other entities and individuals withdraw their opposition, do not constitute legislation.

**¶18**        Our analysis is consistent with an analogous California case, *Worthington v. City Council of City of Rohnert Park*, 31 Cal. Rptr. 3d 59, 63-64 (App. 2005). In that case, a city council and a tribe entered an agreement memorializing the city's "non-opposition" to the tribe's plans to build a casino and resort on property near the city's boundaries, as well as the tribe's commitment to pay the city approximately $200 million over a

twenty-year period. *Id.* Local citizens petitioned to place a referendum on the ballot regarding the city decision to approve the agreement. *Id.* at 61. In concluding that approval of the agreement was a non-referable administrative act, the court concluded that a "legislative act necessarily involves more than a mere statement of policy" and a policy statement, devoid of any enforcement power, "is not an exercise of legislative power." *Id.* at 67. The court reasoned further that "[w]hether a local government approves or chooses to voice its disapproval is not legislation and therefore is not subject to referendum." *Id.*

¶19 Similar to the circumstances in *Worthington*, the City Council's approval of Resolution No. 4840 merely reflected its changed position as to how a majority of the council viewed the Nation's proposed gaming project. Because the council's approval was untethered to any legislative power, the superior court properly concluded the council's approval of Resolution No. 4840 was not a legislative act. *Cf. Cota-Robles v. Mayor and Council of City of Tucson*, 163 Ariz. 143, 146 (App. 1989) (concluding Tucson voters could not hold a referendum election to vote on proposed alignment of a state highway because the city had no "authority to legislate on the matter"); *Citizens for Responsible Transp. v. Draper City*, 190 P.3d 1245, 1249, ¶ 13 (Utah 2008) (holding a city's resolution in support of commuter rail system was not subject to referendum because construction would proceed without the resolution).

## B. Settlement Agreement

¶20 Unlike the City Council's changed position regarding the Nation's gaming project, the provision of Resolution No. 4840 approving the Settlement Agreement does constitute a substantive measure that authorizes, among other things, the expenditure and receipt of funds. Thus, the Settlement Agreement is "legislation" in the sense that it does "enact something." *See Saggio*, 147 Ariz. at 241.

¶21 Consistent with the principles confirmed in *Wennerstrom*, however, a sound rationale exists that favors recognizing a municipality has the authority to enter a binding settlement agreement without the cloud of uncertainty that would exist if the action approving the settlement agreement were subject to referendum. *See Wennerstrom*, 169 Ariz. at 488 ("The sound rationale for limiting the referendum to legislative actions is that to permit referenda on executive and administrative actions would hamper the efficient administration of local governments."). Stated differently, if the terms of a settlement agreement were ultimately subject to the approval of voters, the ability of municipalities to act in their

executive and administrative capacities to effectively negotiate and resolve litigation with other parties would be substantially undermined. Allowing a city's voters to share the ability to control litigation with a city council would result in chaotic, if not absurd, results. In addition, the effectiveness of the judicial system would be compromised if the parties' settlement agreements and corresponding withdrawals from litigation could later be rejected by voters.

**¶22**    We agree with Hirsch that merely labeling a contract a "settlement agreement" is not dispositive as to whether the contract is referable. An agreement that settles pending litigation, however, is, by any measure, a settlement agreement. *See* Black's Law Dictionary 1582 (defining a settlement agreement as "an agreement ending a dispute or lawsuit"). The City Council determined, after years of litigation costing the City more than $3 million in legal fees, it was no longer in the City's best interests to challenge the Nation's proposed gaming facility, through litigation or otherwise, and to end the disputes between them. Contrary to Hirsch's argument, exempting settlement agreements from challenge by referenda is not inconsistent with *Wennerstrom*, which specifically held that that executive and administrative acts of a municipal corporation are not referable. *Wennerstrom*, 169 Ariz. at 488; *see also* McQuillin, § 16.51 ("While the power of the people to legislate directly through referenda is a constitutionally guaranteed right, that right exists only when the law or ordinance the voters seek to challenge was enacted legislatively as opposed to administratively.").

**¶23**    Hirsch fails to cite any case in any jurisdiction holding that a settlement agreement is referable, and our research reveals only contrary authority. *See* McQuillin, § 16.55 ("[T]he following have been deemed not subject to initiative or referendum: . . . settlement of claims in litigation."); *Oakman v. City of Eveleth,* 203 N.W. 514, 517 (Minn. 1925) (holding the city's settlement of certain claims brought against city officials was the "exercis[e] of an administrative function" that involved "investigation and discretion" and was not subject to referendum); *Phillips v. City of Whitefish*, 330 P.3d 442, 456 (Mont. 2014) (determining a settlement agreement was "principally administrative in nature" and, because "the legislative function did not predominate," it was not subject to referendum); *Okerson v. Common Council of City of Hot Springs*, 767 N.W.2d 531, 536 (S.D. 2009) (concluding the settlement of litigation is an "administrative" matter appropriately left to the city council, not voters); *cf. Worthington,* 31 Cal. Rptr. 3d at 67 ("The give-and-take involved when a government entity negotiates an agreement with a sovereign Indian tribe is not legislation, but is a process requiring the consent of both contracting parties.").

¶24          Furthermore, to the extent Hirsch argues the City's obligation to construct offsite infrastructure renders the Settlement Agreement subject to referendum, Hirsch has not cited, nor has our research revealed, any authority supporting the proposition that a government expenditure for a public improvement is, by definition, subject to referendum. To the contrary, the Arizona Constitution provides that laws "for the support and maintenance of the departments of the state and state institutions" are not referable. Ariz. Const. art. 4, pt. 1, § 1(3).

¶25          Construing this provision, our supreme court held "that the framers of the constitution and the people who voted for its adoption understood and intended that appropriations for the support and maintenance of the departments of the state government and state institutions were not to be subject to the referendum." *Garvey v. Trew*, 64 Ariz. 342, 351, 355 (1946) (explaining that appropriations are exempt from the referendum power "when made in support and maintenance of the existing functions of the department or institution"); *cf. Stop Exploiting Taxpayers*, 211 Ariz. at 579-80, ¶¶ 12-15 (holding that a measure increasing utility rates did not create a new tax and thus was not subject to referendum). Hirsch does not argue that the funds the City committed to use to front the costs of offsite infrastructure improvements were unauthorized nor does he dispute that the Nation is obligated to reimburse the City for all actual costs of the improvements. *Cf. Wennerstrom*, 169 Ariz. at 493 (explaining that "[i]f a city makes unauthorized expenditures, the law may provide a remedy, but the expenditures do not convert a non-referable resolution into a referable one").

¶26          Accordingly, the superior court properly concluded that the City Council's approval of Resolution No. 4840 and the Settlement Agreement are not legislative acts that can be challenged by referendum.

## II. Authority to Reject Petitions

¶27          Hirsch argues the City Clerk lacked the statutory authority to reject petitions challenging acts the City Clerk deemed administrative. "We interpret statutes de novo, attempting to give effect to the intent of the legislature." *Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 347, ¶ 7 (2011) (internal quotations and citations omitted). "Generally, when the language of the statute is clear, we follow its direction without resorting to other methods of statutory interpretation." *Pinal Vista Prop., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10 (App. 2004). Statutes relating to the same subject or having the same general purpose, however, "should be read in connection with, or should be construed with other related statutes, as

though they constituted one law." *Id.* (internal quotations omitted). Equally important, every statute must be read in light of related constitutional provisions. *Goodyear Aircraft Corp. v. Indus. Comm'n*, 62 Ariz. 398, 407 (1945).

¶28 Title 19 sets forth the procedural framework for challenging a legislative measure via referendum. First, a person or organization seeking a referendum files an application with the city clerk and then collects signatures. Ariz. Rev. Stat. ("A.R.S.") § 19-111(A); *see* A.R.S. § 19-141(A) (defining "secretary of state" as used in Title 19 to include "city or town clerk"). After collecting the requisite signatures, the applicant files a petition with the city clerk by "tender[ing]" the petition sheets. A.R.S. § 19-121(B). Within twenty days of the applicant's tender of the petition sheets, the city clerk "shall" review the petition sheets for statutory compliance and, if the total number of compliant signatures equals or exceeds the constitutional minimum, the city clerk "shall" randomly select five percent of the signatures for verification. A.R.S. § 19-121.01(B). The city clerk then transmits the signatures in the random sample to the county recorder. A.R.S. § 19-121.01(C).

¶29 Hirsch argues that these statutes governing a city clerk's duties in response to a petition, couched in terms of "shall," afford a city clerk no discretion to reject a petition on the basis that the challenged measure is not legislative in nature. However, read in light of the relevant constitutional provisions from which the referendum power originates, Ariz. Const. art. 4, pt. 1, § 1; Ariz. Const. art. 4, pt. 1, § 1(8), the statutory scheme presupposes that a challenged measure is legislative. This interpretation is consistent with A.R.S. § 19-122(A), which provides that if a city clerk refuses to accept and file a petition for referendum, the clerk must provide the applicant "with a written statement of the reason for the refusal," but does not limit the basis for such refusal to technical noncompliance.

¶30 Likewise, this interpretation is supported by well-established case law upholding the rejection of petitions for referenda challenging non-legislative acts. *See e.g.*, *Wennerstrom*, 169 Ariz. at 487, 495 (noting city clerk refused to process petitions because the resolutions involved were not subject to referendum); *Saggio*, 147 Ariz. at 240 (noting city clerk refused to place a measure on the ballot for a general election); *Garvey*, 64 Ariz. at 355 (upholding the secretary of state's "refus[al] to file the referendum petitions" because the challenged appropriation was not subject to the referendum power); *Stop Exploiting Taxpayers*, 211 Ariz. at 578, ¶ 3 (noting the city clerk refused to transmit a referendum petition because the

challenged measure was an administrative act not subject to referendum). Furthermore, accepting Hirsch's argument would create the illogical result of requiring municipalities to incur the expense of conducting referendum elections on non-legislative measures, even though the outcome would have no practical effect because only a legislative act is referable. *See Walgreen Ariz. Drug Co. v. Ariz. Dep't of Revenue*, 209 Ariz. 71, 73, ¶ 12 (2004) (explaining we interpret statutes "to give them a fair and sensible meaning and to avoid absurd results"). Therefore, we conclude the superior court did not err in rejecting Hirsch's claim that the City Clerk lacked the authority to reject Hirsch's petitions.

¶31    Finally, Hirsch requests attorneys' fees incurred on appeal pursuant to A.R.S. § 12-348(A)(2), which provides for an award of attorneys' fees to any party "that prevails by an adjudication on the merits" in any proceeding reviewing a city, town, or county decision. Because Hirsch has not prevailed on appeal, we deny his request.

## CONCLUSION

¶32    For the foregoing reasons, we affirm the superior court's denial of Hirsch's application for writ for mandamus.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

12