[Civil No. 3338. Filed February 26, 1934.]

[29 Pac. (2d) 1058.]

B. D. PROCTOR, Appellant, v. GEO. W. P. HUNT, MIT SIMMS and ANA FROHMILLER, Appellees.

Mr. Wm. C. Fields, for Appellant.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellee Hunt.

Mr. Arthur T. La Prade, Attorney General, and Mr. Charles L. Strouss, Assistant Attorney General, for Appellees Simms and Frohmiller.

LOCKWOOD, J.—This is an action brought by B. D. Proctor, hereinafter called plaintiff, against George W. P. Hunt, Mit Simms and Ana Frohmiller, at the time of filing this action being Governor, treasurer and auditor of the state of Arizona, whom we shall designate hereafter by the titles of their offices, under the provisions of section 105, Revised Code 1928, which reads as follows:

"§ 105. *Officers and persons liable.* Whenever any person whose duty it is to approve, audit, allow, or pay, claims or demands upon the state, shall approve, audit, allow or pay or consent to, or connive at, the approving, auditing, allowing, or paying of, any claim or demand against the state not authorized by law, such person, and the party in whose favor such claim or demand was made, shall be liable for any money thereby procured, and twenty per cent additional thereon, and legal interest upon such payment from the date thereof."

The complaint, after pleading the formal matters necessary as conditions precedent to the filing of such a suit, sets up thirty different causes of action, each describing a separate claim against the state, and alleging that the Governor formally and in writing allowed and approved of each of said claims; that thereafter the auditor issued her warrants upon the treasurer for the amounts set forth therein, and that the treasurer thereafter paid to the payees designated in the warrants the amount set forth therein. It states in substance that none of these claims were for a public purpose, but on the contrary were for expenditures made for personal and private use, with the exception of three items which were for the payment of certain salaries, and as to these it is alleged

that the services, as set forth in the claim, were never performed.

The defendants demurred separately to the complaint on the ground that it did not state a cause of action as against any of them, which demurrers were by the court sustained, and, plaintiff electing to stand on his complaint, judgment was rendered against him, and this appeal was taken. We must, of course, under the record as it stands, assume that the allegations of the complaint are true, and determine the appeal upon that theory.

The question before us is whether or not the defendants, or any of them, are liable under section 105, *supra,* for their acts in approving, auditing, allowing or paying the said claims, or any of them. In order to determine this, we think it better first to discuss the general principles of law in regard to the expenditure of public moneys, applying to the facts as pleaded, and then to apply the principles, as we have determined them, to the allegations of the complaint.

It is, of course, axiomatic that money raised by public taxation is to be collected for public purposes only, and can only legally be spent for such purposes and not for the private or personal benefit of any individual. Sections 1 and 7, article 9, Constitution of Arizona. It is equally axiomatic that public money may not be spent, even for public purposes, unless somebody, authorized by the Constitution and the law to do so, has made an appropriation therefor. Section 5, article 9, Constitution of Arizona. Under our system of government, these appropriations may only be made by the direct authorization of the people, through the Constitution or an initiated act, or by an act of the legislature, which has plenary power over the expenditures of public money, except as restricted by the terms of the Constitution. This

legislative power may be exercised directly, as in the various appropriation bills made by the legislature from time to time, or indirectly, through the establishment of subordinate municipal corporations, such as counties, cities, school districts and the like, and the authorizing of them to spend certain portions of the public money, but in the end all appropriations are based upon the affirmative act, either of the people or of the legislature.

In this case we need consider only direct appropriations made by the legislature, for it is only by virtue of these that it is claimed the action of the officers in question was justified. The first step toward the payment of money is an appropriation therefor. This may be made by the legislature through the means of either the general appropriation bill, or a special one. In the present instance it is claimed that the appropriation, which defendants contend authorized the expenditure of the money in question, is found in chapter 104, Session Laws of 1929, being the general appropriation bill adopted by the legislature at its regular session in 1929, section 1, subdivision 28, of which reads as follows:

"Subdivision 28. *Governor.* For the office of the Governor: . . .
For the fiscal year beginning July 1, 1930,
and ending June 30, 1931:

| | |
|---|---|
| For Salaries | $25,500.00 |
| For Operation | 7,500.00 |
| For Travel | 2,000.00 |
| For Capital Investment | 475.00 |
| For Repairs and Replacements | 185.00 |
| For Rewards | 1,000.00 |
| Contingent Use | 5,000.00 |
| Total Appropriation | $41,660.00" |

Sections 2 and 4 of chapter 104, *supra,* read as follows:

"Section 2. The appropriations herein made are subject to the provisions of the State Financial Code

in force July 1, 1922, as amended in 1928 Revised Statutes.''

''Section 4. All claims for moneys appropriated or the disposition of which is provided for by the provisions of this act, shall be itemized and accompanied by proper vouchers and each claim shall be audited by the state auditor, who shall reject any voucher or claim or any part thereof, the money for which has not been previously appropriated by law. All said claims shall be verified and the forms of said claims and the verification thereof, shall be prescribed by the state auditor. The state auditor is hereby authorized and directed to draw his warrant upon the proper fund for the amount audited by him and the state treasurer is hereby authorized and directed to pay said warrant out of the fund upon which it is drawn, provided, that all claims for moneys appropriated by this act, shall be fully itemized and that no items shall be grouped under the word 'incidentals' or other general term covering more than one item; should any such items be grouped under the head of 'incidentals' or other general term the state auditor is hereby authorized and directed to reject such claim until it is properly itemized.''

The state Financial Code appears in the Revised Code of 1928 as article 2 of chapter 60 thereof (section 2614 et seq.). Section 2619, Revised Code of 1928, being part of said Code, reads as follows:

''§ 2619. *Presentation, approval and payment of claims.* All claims against the state for an obligation authorized, required or permitted to be incurred by any state officer or agency, and not payable out of any special fund, or in a special manner, shall be paid only in the following manner: The claimant shall present an itemized claim, sworn to by him and approved by the head official of each office or state agency under which the obligation was incurred, or by some other officer thereof, if expressly authorized to approve; then presented to the state auditor and, if approved by him, he shall draw his warrant therefor on the state treasurer, who shall pay the same

when countersigned by the governor and only out of the appropriation made therefor.''

Section 28, Revised Code of 1928, defines the general duties of the auditor, and is in the following language:

"§ 28. *Auditing of claims; other duties.* The auditor shall: 1. Audit, adjust and settle the amount of claims against the state payable out of funds of the state, except only such claims as may be expressly required by law to be audited and settled by some other officer, and investigate any claim presented. If such an investigation discloses that all or any portion of any claim is not for an actual public purpose, connected with the activities of the office, board, commission, or department where the claim originated, he shall refuse to draw a warrant, except for such amount of each claim as appears to be for an actual public purpose. He shall state his reasons for rejection to the originating office, and a warrant shall not be drawn therefor until a new claim, fully itemized, stating specifically the actual public purpose of, and the necessity for each particular item or amount of expenditure referred to in the auditor's statement of reasons, is presented to the auditor properly verified by the oath of the person making the expenditure, and again approved for audit and warrant by the officer, board, commission, or department which in the first instance audited the rejected claim. If such verified claim is not filed, or if re-filed, if it does not then appear that a public purpose is in fact involved respecting the claim thereof, the auditor shall have power to again reject the claim, and report the fact of such rejection to the governor, and no warrant shall be drawn thereon, unless the governor specifically approves the claim in whole or in part.''

We are of the opinion that, construing all of these sections together, as of course it is our duty to do, in order to make them all effective, if possible, that when a claim is to be made for an obligation authorized or permitted to be incurred by any state officer

or agency, which is not payable in some special manner, the claimant must execute an itemized claim, sworn to by him, which must be approved by the head official of the particular office or department by which the obligation was incurred. After this is done, it must be presented to the auditor, and, if it is, on its face, for a public purpose and is properly itemized and accompanied by vouchers, and an appropriation has been made by law for that purpose, it is the mandatory duty of the auditor to approve said claim and to issue a warrant therefor; no discretion being given, if the matters recited beforehand appear in the claim as presented. *Callaghan* v. *Boyce,* 17 Ariz. 433, 153 Pac. 773.

It is contended by plaintiff that the decision in *Callaghan* v. *Boyce, supra,* is not applicable at the present time, for the reason that paragraph 70, Civil Code of 1913, which was the one construed in that case, was amended by section 28, *supra,* in material particulars. We had before us a question similar to the one involved in *Callaghan* v. *Boyce, supra,* in the case of *Fairfield* v. *W. J. Corbett Hardware Co.,* 25 Ariz. 199, 215 Pac. 510, and construed chapter 88, Session Laws of 1921, which is in substance the same as section 28, *supra,* of the 1928 Code. In the last-mentioned case, which involved the issuance, by the auditor, of a warrant on a claim which had been approved by the Board of Regents of the State University, we held, following *Callaghan* v. *Boyce, supra,* that the auditor had no discretion in the matter, so long as the claim was in proper form and appeared on its face to be for a public purpose, and there was an appropriation therefor. In the present case, the various claims were approved by the Governor of Arizona, the head of the department for which the appropriations, which it is contended justified the expenditure of the money in question, were made. We think under these circumstances that unless it appeared upon their face

that the claims, as approved by the Governor, were not in proper form or not for a public purpose, connected with the activities of the Governor's office, for which an appropriation had been made, it was the duty of the auditor, enforceable by *mandamus,* to issue a warrant therefor. If this is not true, and if the auditor must, at her peril, determine not only that the claim, on its face, was for a proper purpose and that there is an appropriation to pay it, but that the items of the claim were necessary and actually used for their ostensible purpose, she must, by herself or her deputies, investigate every transaction of every department of the state government to the uttermost detail, before she dare approve a claim for the purchase of even a paper of pins. No officer could make a long-distance telephone call, however urgent, until he had first consulted with her as to its necessity and advised her of all its details, so that she might determine if it were for a public purpose. The tremendous cost of such procedure, and the manner in which it would hamper and delay the normal operations of the state government are obvious, and the appropriations made by the legislature, from time to time, for the auditor's office, have been grossly inadequate for such a duty. Unless the legislature explicitly so directs, we cannot conceive such to have been its intention. She therefore cannot be held responsible under section 105 when she merely performs the duty imposed imperatively upon her by the law, and, if this be true as to the auditor, much more is it so as to the treasurer, for, when a warrant drawn by the auditor, in proper form, in accordance with law, is presented to him, and the funds are on hand to pay them, he has no discretion. Sections 44 and 47, Rev. Code 1928. We hold, therefore, that, unless it appears upon the face of the claims, approved by the Governor, and presented to the auditor, that they were not in proper form, or not for a public

purpose, no action lies against the auditor and treasurer for issuing and paying warrants for such claims, for the primary duty of auditing them is by section 2619, *supra,* placed upon the Governor, and he, and he only, is responsible if it appears, from evidence *dehors* the face of claims themselves that they were not, as a matter of fact, for a public purpose.

It is necessary, therefore, for us to consider each separate cause of action to determine whether or not it appears upon the face of the claim on which it is founded that it was for a public purpose, and, if it so appears, the demurrers of the auditor and treasurer must be sustained.

We must then consider the claims a second time to determine whether or not the complaint alleges sufficiently that the items set forth therein were not, in fact, purchased for a public purpose, or the work not actually done, in which case the demurrer of the defendant Hunt must be overruled, since he was the head of the department which under section 2619 originally approved the claim, and is responsible for its being, as a matter of fact, what it was on its face.

In examining these items, it is apparent that in many cases the particular subject matter of the claim may or may not be used for a public purpose. We think, therefore, that the rule that it is presumed a public officer will do his duty applies, and that the auditor and the treasurer, when it appears a claim is for an item which may or may not be for a public purpose, according to the way in which it is used, are entitled to presume that the head of the department has applied the article to the public, and not to the private, use, and are not responsible, unless there is something on the face of the claim which should advise them that the use is private and not public.

The Governor, of course, is the chief executive of Arizona, and his duties are manifold. In addition

to the specific duties which he is required by law to perform, there are many other things not expressly set forth in the statutes, which we think may fairly be called among his implied duties. The legislature itself has recognized this, for, after carefully providing in subdivision 28, *supra,* for salaries, operation, travel, capital investment, repairs and replacements and rewards, it has added an appropriation of $5,000 for ''contingent use,'' an item provided for very few, if any, of the other state officers.

We shall apply these rules to the different items set forth in the complaint. They may be divided into several classes. The first consists of various supplies, such as typewriters, books, photographic film pictures. We think it is obvious that the office of the Governor of a state may reasonably and properly have the necessity to use any or all of these articles, from time to time, in the work of the office, and that it does not appear upon the face of any of the claims of this class that they were articles which, under no circumstances, could be used properly for a public purpose.

The second class of items consists of clerical services. It is of course obvious that these, on their face, are proper items for the use of the Governor's office. He is not limited by law to any particular number of clerks or assistants, the amount of the total appropriation for that purpose being evidently the only limit placed by the legislature.

The third class consists of a very large number of postage stamps, some $1,300 in value. While the amount is large, the necessary correspondence of the Governor's office is also large, and we certainly think that, indulging in the presumption of properly performed duty above referred to, there was nothing to advise the auditor that these stamps were not for legitimate use.

The fourth class consists of various traveling expenses of the Governor. He is, of course, required by his duty to travel about the state for many purposes, and the legislature expressly recognized this by providing an item in the annual appropriation bill of $2,000 for the expenses thereof. Unless the auditor should make a personal and inquisitorial investigation of the Governor's travels, there is nothing to advise her that these items are not legitimate. We conclude, therefore, that, so far as the auditor and the treasurer are concerned, since it does not appear affirmatively on the face of any of the claims involved that they were not for public purposes, and since each of the items included therein might be for legitimate public purposes, the complaint does not state a cause of action as to them, and the trial court properly sustained their demurrers.

The situation in regard to the Governor, however, is very different. In each of these items it is specifically alleged that the expenditures were for the personal use and benefit of the Governor, and not for a public purpose, except as to the expenditures for clerk hire, and in these cases it is alleged that the services were never performed. We think that these allegations are sufficient to state a cause of action against the Governor, for, if it be true that he audited and approved claims against the state for money which was expended for his personal and private use, and not for a public use, or were not expended at all, it certainly was sufficient to sustain an action under section 105, *supra*. Of course, if an answer is interposed, denying the allegations of the complaint, it is upon the plaintiff to prove them; the presumption being, as we have said, that the Governor has done his duty, and that the money has been properly expended. There are other matters discussed in the briefs, but we think it unnecessary to mention them. The judgment of the superior court

of Maricopa county is affirmed as to the defendants Simms and Frohmiller, and reversed as to the defendant Hunt, and the case remanded as to the latter, with instructions to overrule his demurrer to the complaint, with leave to answer the allegations thereof, and for such other and further proceedings as may be necessary.

ROSS, C. J., and McALISTER, J., concur.