[Civil No. 4609.  Filed April 17, 1944.]

[148 Pac. (2d) 353.]

THE CITY OF PHOENIX, a Body Politic and Corporate, NEWELL W. STEWART, J. R. FLEMING, CLAUDE C. JONES, FLOYD A. FORD, ALICE MOSIER, THOMAS SULLIVAN, and JOHN H. UDALL, Appellants, v. E. W. MICHAEL, a Taxpayer of the City of Phoenix, Arizona, for Himself and for All Others Similarly Situated, Appellee.

Mr. Hess Seaman, City Attorney, and Mr. George D. Locke, of Counsel, for Appellants.

Mr. Lester Hayt, and Mr. Edwin Beauchamp, for Appellee.

Mr. Walter J. Thalheimer, *Amicus Curiae*.

Mr. E. G. Frazier, *Amicus Curiae*.

ROSS, J.—The plaintiff, E. W. Michael, a tax-payer of the city of Phoenix, brought this action to enjoin such city and its officers from expending the city's public funds in the payment of its dues and assessments as a member of the Arizona Municipal League.

The Arizona Municipal League is a voluntary association of thirty-one of the state's incorporated cities and towns. The objects for which the League is organized, as stated in its constitution, are:

"A. To perpetuate and develop the League as an agency for the co-operation of all cities and towns in the state in the practical study of city and town affairs.

"B. To promote the application of the best methods in all branches of municipal service by holding at least one convention annually for the discussion of problems in municipal administration and by circulating information and experience thereon.

"C. To secure legislation which would be beneficial to the municipalities of the state and the citizens thereof and to oppose legislation injurious thereto."

Each of the cities and towns belonging to the League pays League dues and assessments in proportion to its population, which are used to maintain the League's activities in furnishing services to the member cities and towns of the League. The officers of the League receive no compensation for their services except for travel away from home, when they are paid $5 per day and actual cost of transportation. On its pay roll is a full time field representative or executive secretary, and a part time stenographer.

From December 1, 1935, to April 1, 1942, the city of Phoenix enacted ordinances appropriating its money to pay its proportion of the dues and assessments of the League, in the aggregate amounting to $9,709.04. There is no limit, however, on the amount that may be expended by the Arizona Municipal League.

It is alleged in the complaint that the city officers threaten to enact similar ordinances appropriating its public moneys to the League to enable the League and its officers to conduct various and sundry activities deemed of benefit to the members of the League, and threaten to issue warrants in payment of amounts appropriated. It is alleged that such expenditures, or proposed expenditures, made or to be made by the city and its officers, are not authorized or permitted under the city charter or any law of Arizona, and are in violation of section 7, article 9 of the state constitution.

The defendants moved the action be dismissed on the ground that the complaint failed to state a cause of action. This motion was denied. Thereafter plaintiff's motion for judgment on the pleadings was granted, and from such judgment defendants have appealed.

There are two principal questions involved in this appeal: (1) Is the purpose for which the city proposes to expend its moneys a public purpose; and

(2) if this question be answered in the affirmative, does the city charter or the general law authorize the city to expend its moneys for such purpose?

■ Plaintiff contends that section 7, article 9 of the constitution is intended as a limitation on the power of cities and towns to expend public money or to lend their credit to corporations for private purposes, and is not intended to prohibit or forbid cities and towns from incurring indebtedness or expending public funds for a public purpose. Such section of the constitution prohibits the state or any county or city from giving or loaning its credit in aid of, or from making any donation or grant by subsidy, or otherwise, to any individual, corporation or association, or from becoming a subscriber to or shareholder in any company or corporation, or from becoming a joint owner of property with any person, company or association, except when it is acquired by the state by operation of law. But what the city of Phoenix and its officers have done, or intend, or threaten to do, does not fall within any of the acts prohibited by such provision of the state constitution. "Such provisions are generally construed as directed against benefits at public expense attempted in behalf of individuals, corporations, or associations, acting independently and conducting some enterprise of their own such as are usually conducted for profit and are commercial in nature." 38 Am. Jur. 94. *Day* v. *Buckeye Water Cons. & Drainage Dist.,* 28 Ariz. 466, 237 Pac. 636; *Wise* v. *First Nat. Bank of Nogales,* 49 Ariz. 146, 65 Pac. (2d) 1154; *Humphrey* v. *City of Phoenix,* 55 Ariz. 374, 102 Pac. (2d) 82; *Stanley* v. *Jeffries,* 86 Mont. 114, 284 Pac. 134, 70 A. L. R. 166.

■ We conclude that the incurrence of the expenses here sought to be enjoined is not prohibited by section 7, article 9 of the constitution.

█ It is fundamental that the city may not expend public money except for public purposes, and then only when directly or impliedly authorized to do it. The purposes for which the city of Phoenix and other cities of the state are asked to finance the Arizona Municipal League, as defined in the League's constitution, are twofold: (1) The education and training of city officers in city affairs, and teaching and familiarizing such officers as to how such affairs may best be managed or carried on; and (2) to work to secure legislation beneficial to the municipalities of the state, and to oppose any legislation injurious to such municipalities.

The charter of the city of Phoenix, section 9, article 18, provides that "all taxes shall be uniform upon the same class of property within the corporate limits, and shall be levied and collected for public purposes only." Section 1, article 9 of the constitution has a like provision. The vital question for decision then is whether the public money expended by the Municipal League, to maintain its activities as enumerated, is for a public purpose.

█ Phoenix is a home rule city, organized under the provisions of the state constitution, section 2, article 13, and as such may exercise any powers of government "consistent with, and subject to, the constitution and laws of the state." That means that the powers exercised by the city must be in accord with the constitution and laws of the state, and not in conflict therewith.

If, under the constitution, the legislature may appropriate public moneys to educate and train its public officers and servants for their duties, and to influence legislation considered beneficial by said officers, then, by analogy, the cities and towns of the state may do so with their public funds.

As said above, the Municipal League. is a voluntary organization of officers of the incorporated cities and towns of the state. These officers have assumed that name and under it operate. They might just as well operate under any other fictitious name. The fact is that it is made up of the officers of such municipalities. These officers are of the conviction that they, and their successors, are entitled to educational training by the public for their duties. They also feel that legislation affecting incorporated cities and towns is peculiarly their concern and, therefore, they should exercise their influence for legislation that is beneficial, and against legislation that is injurious to such cities and towns.

The mere statement of these propositions we think condemns them. No greater affront can be offered an aspirant to public office than that he is not qualified. It seems to be the rule that qualification to get in office is a guarantee of qualification to fill it competently. That is the American idea. The officers of the state's incorporated cities and towns, in seeking office, doubtless would most strenuously resent, as would their constituents, a suggestion that they were not qualified to discharge the duties of the office.

■ The police power of the incorporated cities and towns of Arizona is coextensive with that of the state, except when limited or restricted by the constitution or laws of the state. 37 Am. Jur., at page 925, sections 288, 289, enumerates the many things that may be regulated or suppressed by municipal ordinances, as for protection of the public health, the public safety or convenience, the general welfare and prosperity of the city or town, the morals thereof, and for purely esthetic purposes. We think the charter powers of the city of Phoenix are broad enough to permit the municipality to pass ordinances for the purpose of regulating or suppressing any of

the evils enumerated and to incur indebtedness for that purpose.

In *Miller* v. *Board of Public Works,* 195 Cal. 477, 234 Pac. 381, 383, 38 A. L. R. 1479, the court said:

" . . . In short, the police power, as such, is not confined within the narrow circumscription of precedents, resting upon past conditions which do not cover and control present day conditions obviously calling for revised regulations to promote the health, safety, morals, or general welfare of the public; that is to say, as a commonwealth develops politically, economically, and socially, the police power likewise develops, within reason, to meet the changed and changing conditions. What was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power. This is so because:

" 'What was a reasonable exercise (of this power) in the days of our fathers may to-day seem so utterly unreasonable as to make it difficult for us to comprehend the existence of conditions that would justify same; what would by our fathers have been rejected as unthinkable is to-day accepted as a most proper and reasonable exercise thereof.' *Streich* v. *Board of Education,* 34 S. D. 169, 147 N. W. 779, L. R. A. 1915A, 632, Ann. Cas. 1917A, 760.''

The precise question we have to decide has not often arisen. In *City of Roseville* v. *Tulley, City Treasurer,* 55 Cal. App. 2d 601, 131 Pac. (2d) 395, 398, it was decided that the city possessed the power and authority, under its charter, to appoint delegates to a conference of the League of California Cities, and provide for the payment of their expenses while attending such conference. Among other things the court said:

"It is important to note the distinction between a city such as Roseville, which operates under a Freeholders' Charter, and which has plenary power in municipal affairs, and a public agency such as a

county, which has only such powers as have been expressly granted to it or are necessarily implied in the powers expressly granted.

"Section 1 of article IV of the charter declares that: 'The City of Roseville, by and through its Council and other officials, shall have and may exercise all powers necessary or appropriate to a municipal corporation and the general welfare of its inhabitants which are not prohibited by the Constitution of the State of California and which it would be competent for this Charter to set forth particularly or specifically, and the specification herein of any particular powers shall not be held to be exclusive of or any limitation upon this general grant of powers.' "

The court there held that the city's charter powers under the constitution authorized an incurrence of the expenses of the delegates to the League of California Cities, and the payment thereof.

Where the identical question has arisen in other jurisdictions the decisions have been contrary to that in the Roseville case, *supra*.

In *State ex rel. Thomas* v. *Semple, Director of Finance,* 112 Ohio St. 559, 148 N. E. 342, 343, the court held the city was without power or authority to contribute to the support and maintenance of the so-called "Conference of Ohio Municipalities." We quote extensively from the opinion, the facts appearing to be practically the same as the facts here:

" . . . The constitution of the so-called 'Conference of Ohio Municipalities' indicates that it is an organization of the municipalities of the state, the purpose and object of which is to serve as an agency of common action in all matters of common concern to municipalities of Ohio. The dues of municipalities becoming members range from $10 to $500 per year. Those of Cleveland would be the latter figure. Provision is made for the election of officers and an executive committee, including an executive secretary to

be in charge of headquarters of the conference. Among other services to be rendered is the maintenance of a headquarters, and therewith a bureau of information, through which it is proposed to keep the members advised of pending litigation, as well as legislation and other matters affecting their interests, and to publish a periodical.

"It does not follow, from the broad powers of local self-government conferred by article 18 of the Constitution of the state, that a municipal council may expend public funds indiscriminately and for any purpose it may desire. The misapplication or misuse of public funds may still be enjoined, and certainly a proposed expenditure, which would amount to such misapplication or misuse, even though directed by a resolution of council, would not be required by a writ of *mandamus*. Without considering the validity of such a provision, it must be conceded that there is no express provision of the charter of the city of Cleveland relative to the contribution from the treasury of the city to a fund made up of contributions of various municipalities for the purposes enumerated in the constitution of the 'Conference of Ohio Municipalities,' and no general provision from which authority may be inferred to expend the funds of the city to assist in creating and maintaining an organization with offices and officers entirely separate from those of the city, selected by representatives of various municipalities of the state, with salaries and expenses also fixed by them."

There is no expression in the Phoenix charter concerning the expending of the city's public money to maintain the Arizona Municipal League, or any other organization of its kind.

In *City of Cleveland* v. *Artl,* 62 Ohio App. 210, 23 N. E. (2d) 525, it was held the municipal council had no authority to expend the city's moneys to send a committee to the state capitol to urge the governor to submit a program to the legislature which would supplement the relief needs of the city and county, or

for the purpose of sending a committee to New York to welcome athletes upon their return to the United States, following and approving the Semple case.

In *Waters* v. *Bonvouloir,* 172 Mass. 286, 52 N. E. 500, 501, the question was whether an appropriation by the city of Holyoke to defray the expenses of a committee to represent the city at a convention of "American Municipalities" to be held in Detroit, was for a public purpose. The court said:

" . . . The purpose apparently is to educate the committee generally with reference to all questions pertaining to municipal administration anywhere. It is not confined to the ascertainment of facts for the information of the board of aldermen of the city of Holyoke, concerning questions actually pending before the board. There is nothing in the statutes of the commonwealth which authorizes the city of Holyoke to become a member of the League of American Municipalities, and the attendance of a committee made up of the mayor and certain members of the board of aldermen upon any meeting of that league is for the purpose of listening to, or taking part in, general discussions concerning municipal administration. The general education of the mayor and aldermen upon all matters relating to municipalities in the United States and Canada is not, we think, a public purpose, and cannot be paid for out of the funds of the city. An injunction should be issued as prayed for."

We are firmly convinced that the expenditure of the public moneys of the cities and towns of Arizona, in the manner and for the purposes indicated, may not be done on the theory that such expenditures are for a public purpose, and we accordingly affirm the judgment of the lower court.

McALISTER, C. J., concurs.

STANFORD, J. (Dissenting).—I believe the payment of the annual dues for services charged by the

League is an expenditure for a proper municipal purpose.

In the case of *City of Roseville* v. *Tulley,* 55 Cal. App. 2d 601, 131 Pac. (2d) 395, 400, the question involved was whether or not the expenditure of funds by city officials to attend a convention of the League of California Cities was a proper expenditure, and I agree with the holding of that case as set forth in the final and following paragraph:

"We therefore conclude that payment of the necessary expenses incurred by the duly delegated officers and employees of the city of Roseville in attending the annual conference of the League of California Cities, will constitute a lawful disbursement of municipal funds for a public purpose."