171 P.2d 356

## FROHMILLER v. BOARD OF REGENTS OF UNIVERSITY AND STATE COLLEGES.

### No. 4905.

Supreme Court of Arizona.

July 1, 1946.

Charles L. Strouss, of Phoenix, for appellant.

John L. Sullivan, Atty. Gen., and John W. Rood, Asst. Atty. Gen. (J. Byron Mc-

Cormick and Calvin Webster, both of Tucson, of counsel), for appellee.

STANFORD, Chief Justice.

Appellant, who was the plaintiff in the superior court of Maricopa County, will in this opinion be termed as such, and the appellee styled defendant.

Plaintiff, as auditor of the state of Arizona, had presented to her for approval certain claims by defendant. The claims were against funds of the University of Arizona, Arizona State College at Tempe and Arizona State College at Flagstaff.

Plaintiff's complaint alleged that "defendant, acting through its duly authorized agents and employees, contends that the expenditures evidenced by said claims, and each of them are for a public purpose, are properly and legally payable out of state funds, and has requested plaintiff to issue her warrant in payment of said claims.

"That plaintiff as State Auditor of the State of Arizona, denies that the expenditures evidenced by said claims, or any of them, are for a public purpose, denies that said expenditures are properly or legally payable out of monies of the State of Arizona, and has refused to issue her warrant in payment of said claims, or any of them."

The position of plaintiff is set forth in her proposition of law:

"It is the duty of the appellant as Auditor of the State of Arizona to examine each claim filed with her calling for the expenditure of public funds, and disapprove and refuse to allow any expenditures she believes is not for a public purpose, and the auditor, if she approves an expenditure which is not for a public purpose, is liable for the amount thereof plus a 20% penalty, even though she has acted in the utmost good faith."

Two classes of claims were presented by defendant. 1. Claims for dues for membership of the respective institutions herein mentioned in certain activities. 2. Claims for reimbursement for travel attending conventions of association meetings. The claims in class 1, plaintiff claims, are mostly for membership dues in specified educational societies or associations. Plaintiff feels compelled to resist this class of a claim because of our case of City of Phoenix v. Michael, 61 Ariz. 238, 148 P. 2d 353, 354.

In the case of City of Phoenix v. Michael, supra, the plaintiff, E. W. Michael, a taxpayer of the City of Phoenix, brought an action to enjoin the city and its officers from expending the city's public funds in the payment of its dues and assessments as a member of the Arizona Municipal League, and this court said:

"* * * The vital question for decision then is whether the public money expended by the Municipal League, to maintain its activities as enumerated, is for a public purpose."

The Michael case, supra, quotes from In re State ex rel. Thomas v. Semple, Director of Finance, 112 Ohio St. 559, 148 N.E. 342, 343:

"* * * the court held the city was without power or authority to contribute to the support and maintenance of the so-called 'Conference of Ohio Municipalities.'

\* \* \* \* \* \*

" 'It does not follow, from the broad powers of local self-government conferred by Article 18 of the Constitution of the state, that a municipal council may expend public funds indiscriminately and for any purpose it may desire. The misapplication or misuse of public funds may still be enjoined, and certainly a proposed expenditure, which would amount to such misapplication or misuse, even though directed by a resolution of council, would not be required by a writ of mandamus. Without considering the validity of such a provision, it must be conceded that there is no express provision of the charter of the city of Cleveland relative to the contribution from the treasury of the city to a fund made up of contributions of various municipalities for the purposes enumerated in the Constitution of the "Conference of Ohio Municipalities," and no general provision from which authority may be inferred to expend the funds of the city to assist in creating and maintaining an organization with offices and officers entirely separate from those of the city, selected by representatives of various municipali-

ties of the state, with salaries and expenses also fixed by them.'

"There is no expression in the Phoenix charter concerning the expending of the city's public money to maintain the Arizona Municipal League, or any other organization of its kind."

So it appears that the case of City of Phoenix v. Michael was decided on the lack of power by the charter of the City of Phoenix to allow the expenditure of funds for membership in the Arizona Municipal League.

In 1945 the regular session of our 17th legislature passed Chapter 103, being an act making appropriations for the different departments of the state, for state institutions, for public schools and for interest on the public debt. That bill became a law before the expenditures of the monies involved in this action, and in said Chapter 103 under the heading of "Arizona State College at Flagstaff, Arizona State College at Tempe and The University of Arizona," is the following:

"Lump Sum Appropriation:

"For salaries and wages; for operation, including dues, assessments or membership fees in societies, associations and organizations; for travel to attend meetings, conferences and for other college purposes; for capital investment; for repairs and replacements:"

Plaintiff stated in her brief that "Frankly, the appellant is in accord with this con-

tention by the appellee but believes that this Court has held to the contrary in Michael v. City of Phoenix." While it is true that in the City of Phoenix v. Michael case, supra, the City of Phoenix lacked proper authority through its charter to expend certain funds, the reasoning in the case of People v. Bunge Bros. Coal Co., 392 Ill. 153, 64 N.E.2d 365, 371, shows the trend of courts to a broader view in allowing the use of taxpayers' money. From said case we quote:

"Appellant next argues that it was error to sustain the objection to the appropriation and levy for dues to be paid to the Illinois Municipal League, $3,000; dues to be paid to the United States Conference of Mayors $3,000, and the purchase of works of art $2,000. The trial court held these appropriations were not for corporate purposes. We are of the opinion that so far as the payment of dues to the Illinois Municipal League and the United States Conference of Mayors are concerned, these represent not appropriations to private corporations, as argued, but appropriations to the city to be used for payment of dues in these organizations by reason of the benefit to be derived from the service given by such corporations. It seems clear that the discussion, by mayors and other city officials, of problems affecting the well-being of their respective cities, and the study of conditions affecting taxpayers of municipalities, are public purposes, and moderate appropriations for those purposes are justified. * * *"

The State of Arizona, however, has specially enacted a law so our institutions of higher learning may take advantage of the benefit derived from the contact and intercourse had by the payment of "dues, assessments or membership fees in societies, associations and organizations."

Article 11, Section 10, Constitution of Arizona, reads as follows:

"(Sources of school funds.)—The revenue for the maintenance of the respective state educational institutions shall be derived from the investment of the proceeds of the sale, and from the rental of such lands as have been set aside by the Enabling Act approved June 20, 1910, or other legislative enactment of the United States, for the use and benefit of the respective state educational institutions. In addition to such income the legislature shall make such appropriations, to be met by taxation, as shall insure the proper maintenance of all state educational institutions, and shall make such special appropriations as shall provide for their development and improvement."

Section 54-1314, A.C.A.1939, was amended by Chapter 80, Sec. 6, of the Session Laws of Arizona 1945, to read as follows:

"Funds under control of board.—All money for the use and benefit of the state colleges shall be expended under the direction and control of the board of regents for the support and maintenance of all colleges for buildings and grounds, and for any other purpose that the board deems

expedient if not inconsistent with the provisions of any appropriations."

■ Plainly from the foregoing, expenditures about which this action is brought "could not be inconsistent with the provisions of any appropriations," and they were for a public purpose.

We find no better definition for "public purposes" than set forth in the case of Ward v. Frohmiller, 55 Ariz. 202, 100 P.2d 167, 169, which states:

"* * * We think the natural and logical definition of the words 'public purpose' and so used is synonymous with 'a purpose approved and authorized by law.' * * *"

Having felt that plaintiff's assignments of error were embodied in her single proposition of law, we now refer to the latter part of her contention, namely "and the auditor, if she approves an expenditure which is not for a public purpose, is liable for the amount thereof plus a 20% penalty, even though she has acted in the utmost good faith." On this subject of responsibility of the auditor, we quote from the case of Ward v. Frohmiller, supra:

"The responsibility for determining whether these things are true is not placed by the law upon the auditor, but upon the head of the department who approves the claim. If as a matter of fact the discretion was abused, or the money not spent for the purpose indicated by the claims, the remedy of the state is ample. If the claims have not already been paid by the treasurer, injunction proceedings will lie against the latter, during which all of the true facts may be presented to and determined by the court. If the claims have already been paid, the responsible head of the department approving them and his bondsmen are forever liable to the state for the illegal expenditure, in a proper action brought to recover the money (Proctor v. Hunt, supra [43 Ariz. 198, 29 P.2d 1058]), for the statutes of limitation do not run against the state."

■ For the guidance of the auditor we submit the following "rule of thumb" in the handling of claims: If a claim shows on its face that it is for a public purpose and is properly itemized, accompanied by vouchers, is approved by the head of the department and there are still unappropriated funds for the payment of same, it is not her duty to investigate further, and she should approve the claim and issue the warrant.

The law books of the State of Arizona are replete with cases bearing on the subject under consideration in the instant case, and it is important that we adhere to the cases of our state pertaining to the matter. However, to this time they have failed to make the duties of the auditor distinct to the end that the auditor might know that she is not liable in the performance of certain duties. In addition to the case of Ward v. Frohmiller, supra, cited by defendant, defendant has also cited

numerous other Arizona cases, including the case of Fairfield v. W. J. Corbett Hardware Co., 25 Ariz. 199, 215 P. 510. Fairfield was the auditor of the State of Arizona at that time. Quoting from part of the case in order to relate the facts:

"The appellee, W. J. Corbett Hardware Company, received by assignment from English & Pierce two claims arising under contracts for the construction of a building for the University of Arizona. These assignments were approved by the board of regents of the University on January 6, 1921, and May 23, 1921, respectively. Afterwards the assigned claims were allowed and audited by the board of regents of the University, and also by the state auditor. The auditor, however, refused to issue any warrant in payment of portions of the claims, in the amounts above stated, upon the ground that English & Pierce, assignors of these claims, and said to be insolvent, were indebted to the state of Arizona for the said amounts upon a stated account, * * *."

This court further said:

"In any event, the auditor was not authorized to withhold warrants from the appellee after its claim had been approved and ordered paid by the board of regents. The State University is governed by a board of regents, which for that purpose is created a body corporate (Revised Statutes of Arizona (Civ.Code), pars. 4472 and 4475), empowered to take and hold property in its corporate name, and become a party to contracts upon which it may sue and be sued. Within the scope of its duties, it is supreme. The contract with English & Pierce for the construction of a building for University purposes was within the scope of its duty. This board was competent to receive notice of the assignment of the interest of English & Pierce in that contract, and was authorized to assent to it.

"The fund out of which the claims of English & Pierce, or their assignees, were payable, was placed under the sole control of this board, both by the act of appropriation above quoted and by the laws of the state defining the powers and duties of the regents. It was a function of the regents to determine who was entitled to receive the moneys payable upon the contract price, and to direct the payment. These are necessary incidents of the board's contractual capacity, without which there could be no such capacity. If it violates the law, or breaks the contract, it is answerable in its own corporate name before the judicial tribunal having jurisdiction of the matter; but not subject to supervision in such matters by the state auditor. The only condition upon which the state auditor might decline to draw a warrant in payment of a claim allowed by the board of regents would be that the claim was not for a public purpose. * * *"

After doing the things herein enumerated to be done, the auditor is free from liability. Responding to the duties of her

office, she has been diligent respecting claims submitted to her, but for her guidance and protection and for the purpose of curtailing litigation, we now supplement the many cases heretofore handed down by this court on this subject by the affirmance of the judgment of the trial court.

LA PRADE, J., concurs.

MORGAN, J., being disqualified, it was stipulated by counsel for both sides that the hearing should be had before LA PRADE, J., and STANFORD, C. J.