370 P.2d 769

**Carl AUSTIN et al., Appellants,**

v.

**David H. CAMPBELL, Appellee.**

No. 6691.

Supreme Court of Arizona.

En Banc.

April 11, 1962.

Robert Morrison, a former Atty. Gen., Wade Church, former Atty. Gen., and Leslie C. Hardy, his Chief Asst. Atty. Gen., Robert W. Pickrell, present Atty. Gen., for appellant Jewel W. Jordan, State Auditor, State of Arizona.

C. A. Muecke and Martin F. Keil, Phoenix, for appellants Carl Austin, C. J. Carreon, William J. Harkness, Neales Kennedy, Patrick W. O'Reilly, Robert A. Petrie, Del Rogers a. k. a. Delbert Delfino, Harry Ruppelius and Robert E. Wilson.

Stephen S. Gorey, Phoenix, for appellant Norman Lee.

W. L. Farringer, Phoenix, for appellant William Younger Wood.

Stockton & Aldrich, Phoenix, for appellant J. P. Stump.

William H. Rehnquist, Phoenix, for appellee David H. Campbell.

UDALL, Vice Chief Justice.

This is a taxpayer's action to recover for the State of Arizona certain expense reimbursements audited, paid out and received pursuant to a statute later held unconstitutional by this court in Giss v. Jordan, 82 Ariz. 152, 309 P.2d 779 (1957). From a summary judgment for plaintiff Campbell, defendants Jewel W. Jordan, auditor for the State of Arizona, and thirteen members of the Twenty-second Legislature have appealed.

Since 1947 Arizona legislators have been reimbursed for necessary expenses in-

curred during sessions of the legislature.[1] But prior to 1956 amounts so expended by a legislator were restored to him only after compliance with what is now A.R.S. § 35–181 which provides in pertinent part:

"A. All claims against the state for obligations authorized, required or permitted to be incurred by any state officer or agency, shall be paid only in the following manner:

"The claimant shall present an *itemized claim, sworn to by him and approved by the head official* of each office or state agency under which the obligation was incurred * * *. *The claim shall then be presented to the state auditor* and, if approved, the auditor shall draw his warrant therefor on the state treasurer, who shall pay it when countersigned by the governor but only from the appropriation made therefor. * * *."[2] (Emphasis added.)

On January 4, 1956, however, the Governor approved an amendment to the reimbursement statute (A.R.S. § 41–1103) subsections D and E of which read as follows:

"D. *Reimbursement of expenditures made under* the provisions of subsections A, B and C of *this section shall not be subject to the provisions of* § *35–181.*

"E. All payments provided for in this section shall be paid upon approval of the president of the senate or the speaker of the house of representatives from funds appropriated for the house of the legislature over which he presides."[3] (Emphasis added.)

On February 27, 1956 plaintiff Campbell (who was also a member of the Twenty-second Legislature) wrote to the Attorney General and asked, *inter alia:*

"2. What penalty could be imposed on a member of the legislature from

1. Ariz.Laws 1947, ch. 16, § 1 at 25–26. See Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436 (1947) wherein this legislation was held not to run counter to art. 4, pt. 2, § 17 of the Arizona Constitution, A.R.S. which provides that:
"The Legislature shall never grant any extra compensation to any public officer * * * after the services shall have been rendered * * * nor shall the compensation of any public officer be increased or diminished during his term of office * * *."

2. From 1912 until 1943 the predecessors of A.R.S. § 35–181 simply provided that:

"Persons having claims against the State shall exhibit the same, sworn to, *with the evidence in support thereof to the Auditor* * * *." (Emphasis added.) (Ariz.Laws 1912, ch. 80, § 6 at 424; § 4–304 A.C.A. (1939).) In the Financial Administration Act of 1943, however, the "itemized claim, sworn to by him" language now obtaining in A.R.S. § 35–181 was added. Ariz.Laws 1943, ch. 86, art. 4, § 3 at 208; § 10–926 A.C.A. (1952 Supp. at 333).

3. Ariz.Laws 1955, (3rd S.S.) ch. 2, § 1 at 498.

Maricopa County when said member resides at his usual place of residence but draws $17.00 per day subsistence instead of $12.00 per day as set forth in Section 41–1103, A–1?" [4]

More correspondence between plaintiff Campbell and the Attorney General followed. In one letter the Attorney General admitted having seen a list of the legislators later named defendants in this action. Finally, on May 26, 1956 plaintiff wrote to and requested legal action by the Attorney General as follows:

"Under the provisions of Sections 35–211, 35–212 and 35–213 Arizona Revised Statutes, you are hereby requested to bring action against certain members of the Maricopa County delegation to the House of Representatives, who have received subsistence payments in excess of those authorized by Section 41–1103.

"The names of these members were given your office in February, 1956. They were also publicly read into the Journal of the House for permanent record on February 22, 1956. Warrant numbers, dates, and the amounts in question are on file in the office of the State Auditor. Receipts, as required by law prior to January 6, 1956, should also be on file in the State Auditor's office."

The Attorney General did not act. Consequently, on August 24, 1956 plaintiff Campbell instituted his taxpayer's action pursuant to A.R.S. § 35–213.[5] The complaint is in two counts the first of which alleges overpayments in varying amounts to the several legislator-defendants all of whom were residents of Maricopa County during the times in question. The overpayments sought to be recovered in Count I represent the difference between the maximum daily expense allowance of $17 permitted a legislator "not residing at his usual place of residence" during a session and the $12 daily ceiling imposed upon

---

4. Subsection A of A.R.S. § 41–1103 (1956) provided:
   "Each member of the legislature, during sessions of the legislature, shall be allowed and receive in addition to any compensation and mileage as authorized by law a reimbursement for subsistence, incidentals, lodging and other expenses in aid of the performance of his duties and responsibilities as a legislator, as follows:
   "1. If residing at his usual place of residence, not to exceed twelve dollars per day.
   "2. If not residing at his usual place of residence, not to exceed seventeen dollars per day."

5. Section 35–213, which codifies the common-law taxpayer's action in behalf of the state, provides in pertinent part:
   "A. If for sixty days after *request* made by a taxpayer of the state *in writing*, the attorney general fails to institute an action as provided in § 35–212, any taxpayer of the state may institute the action in his own name and at his own cost with the same effect as if brought by the attorney general." (Emphasis added.)

one "residing at his usual place of residence." (See A.R.S. § 41–1103, subd. A, supra note 4.) Thus, in Count I each of the defendant-legislators is alleged to have received excessive expense reimbursement in an amount computed by multiplying $5 times the number of days for which he was reimbursed at the $17 rate.

Count II then alleges that *all* of the expense monies paid these defendants were improperly paid and received in that "none of said defendants * * * complied with the provisions of 35–181, A.R.S.1956, in submitting their subsistence claims described in Count I to defendant Jordan."

The complaint concludes by seeking recovery from each legislator of the differing amounts received (ranging from $1,292 to $1,632 each) and the total of these amounts from defendant Jordan as the State Auditor.[6] Plaintiff also asks for the statutory 20% penalty,[7] interest, costs and attorney's fees.[8]

Before the action came on for trial this court's decision in Giss v. Jordan, 82 Ariz. 152, 309 P.2d 779, was announced on April 6, 1957. It was there held that subsections D and E of A.R.S. § 41–1103 were invalid in that they attempted to transfer to the legislative branch a function (auditing claims against the state) constitutionally delegated to the executive branch of the government. Accordingly, an alternative writ of mandamus whereby members of the legislature sought to compel the State Auditor to approve expense claims submitted in accordance with A.R.S. § 41–1103, subds. D and E was quashed.[9]

After the Giss decision plaintiff moved for, and on January 31, 1958 was granted,

---

6. Plaintiff's claim for summary judgment against the State Treasurer, originally named in the complaint, was expressly waived.

7. A.R.S. § 35–211 provides that: "When any person who is obligated to approve, audit, allow or pay claims or demands upon the state, approves, audits, allows or pays, or consents to, or connives at, approving, auditing, allowing or paying a claim or demand against the state not authorized by law, such person, and the person in whose favor the claim or demand was made, shall be liable for any funds procured in such manner, plus twenty per cent of such amount and legal interest upon the amount paid from date of payment."

8. A.R.S. § 35–213, subd. C provides that: "If the taxpayer prevails in the action, the court shall allow him costs and reasonable attorney's fees, not to exceed forty per cent of the amount recovered or saved to the state, as the case may be.

9. See Giss v. Jordan, 82 Ariz. 152, 157–158, 309 P.2d 779, 782–783 (1957) for an illustration of the claim forms utilized by the defendant-legislators. This court pointed out at 82 Ariz. 158, 309 P.2d 783: " * * * that the claims are neither verified nor itemized, and no pretense is made to support the claimed reimbursement by attaching any vouchers or receipts." This feature, it was held, prevented the auditor from determining whether the claims " * * * are excessive in amount and therefore inconsistent with the constitutional provision * * * prohibiting extra compensation." 82 Ariz. at 165, 309 P.2d at 788.

**200**

summary judgment on Count II of the complaint. But before the formal judgment for plaintiff was entered on March 20, 1958 the legislature quickly amended A.R.S. § 35–181 by adding the following two subsections:

"D. Any claim made and approved contrary to subsection A, in the absence of fraud or bad faith on the part of the claimant or disbursing officer, may be amended at any time to conform to the requirements of subsection A and upon amendment such claim shall be exempt from the provisions of § 35–211.

"E. Any public funds paid or received pursuant to law, in the absence of fraud or bad faith in the disbursement or receipt of such funds prior to such law being declared unconstitutional by the supreme court of the state of Arizona, shall be exempt from the provisions of § 35–211. As amended Laws 1958, ch. 7, § 1." **9a**

On appeal from the judgment of March 20, 1958 defendant-legislators and the auditor contend:

(1) that the Superior Court had no jurisdiction to entertain the suit because of the insufficiency of plaintiff Campbell's "request * * * in writing" that the Attorney General institute the action;

(2) that one is not liable in a taxpayer's action for receipt or payment of state monies in "good faith" reliance upon a statute later held unconstitutional; and that in any event

(3) they are protected by the "curative" amendment of March 20, 1958 set out above.

I  *Sufficiency of Taxpayer's Written Request*

■ Section 35–213, subd. A [10] requires that a taxpayer first "request * * * in writing" action by the attorney general before individually instituting suit in behalf of the state to recover monies illegally paid or received. Plaintiff admits failing

---

**9a.** On March 18, 1958 Section 41–1103 (the reimbursement statute) was also amended. It now reads in pertinent part: "B. In addition to the salary provided in subsection A, each member of the legislature shall also be reimbursed for travel and other necessary expenses incurred in attendance upon regular sessions, special sessions or other meetings called by or at the direction of the presiding officer of either house of the legislature at the same rate and in the same manner as for other public officers, except that such reimbursement shall not be paid for any

regular session or special session to members of the legislature whose usual place of residence is within the city limits of the city in which the state capitol building is situate, and except that reimbursement shall not be paid for any other meetings to members of the legislature whose usual place of residence is within the city limits of the city at which such meeting is held." A.R.S. § 41–1103 (1956 Supp.) (Ariz.Laws 1958, ch. 90, § 1 at 181–82).

**10.** See note 5, supra.

to make any such request for legal action against the auditor. Nevertheless plaintiff asserts that any monies illegally received were illegally paid and that therefore the attorney general was under a duty to sue the auditor whether asked to do so or not.

■ This contention, however, is untenable for two reasons. (1) The auditor is not, *ipso facto*, liable on her bond whenever it is shown that someone has wrongfully submitted a claim which she thereafter approves. Cf., Proctor v. Hunt, 43 Ariz. 198, 29 P.2d 1058 (1934). (2) The written "request" specified by A.R.S. § 35–213, subd. A is a *jurisdictional* requirement. Annot., 124 A.L.R. 585, 602–604 (1940). Accordingly, the Superior Court exceeded its jurisdiction in entertaining and entering judgment on plaintiff's claim against the auditor in the instant case.[11]

■ The case is different, however, respecting the sufficiency of plaintiff's request that the attorney general institute suit against the defendant-legislators. For although not mentioned in plaintiff's letter of May 26, 1956, the names of these men were admittedly known by the attorney general. Moreover the May 26th letter referred the attorney general to a listing of the pertinent names in the House journal. And the same letter referred the attorney general to the auditor's files for the necessary supporting receipts, warrant copies, etc.

This information, coupled with the previous correspondence between plaintiff and the attorney general, was sufficient to inform the latter that he was being asked to recover unauthorized expense reimbursements from the legislators here appealing. The important thing in such cases is that the attorney general receive actual notice and details of the particular wrongs charged and the names of the persons who allegedly committed them. In construing a similar statute the Oklahoma Supreme Court observed that:

"Fairness and justice require that such a notice be sufficient in form and substance to serve the office and purpose of such a notice, but no more is required, and when that requirement is met, fairness and justice require that the notice be held legally sufficient." [12]

To require more of the taxpayer "would emasculate the statute. The plain legislative intent in enacting the statute was to encourage the recovery of state money illegally expended." United States Fidelity

11. See section III of this opinion, *infra*, at page 775 discussing the auditor's liability in connection with claims approved pursuant to a statute later held unconstitutional.

12. Dowler v. State, 179 Okl. 532, 537, 66 P.2d 1081, 1088 (1937).

& Guaranty Co. v. Frohmiller, 71 Ariz. 377, 381, 227 P.2d 1007, 1010 (1951). By these standards plaintiff's request was sufficient as to the legislator-defendants.

## II  *Effect of Declaring Statute Unconstitutional*

Plaintiff argues in support of the judgment that an unconstitutional statute is a nullity and that therefore the payments received thereunder by defendant-legislators were "illegal"[13] and must be returned to the state. This contention is grounded upon that concept of an unconstitutional statute enunciated by the United States Supreme Court in Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). The Court there observed that:

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it

had never been passed." 118 U.S. at 442, 6 S.Ct. at 1125.

Nevertheless this court in Texas Co. v. State, 31 Ariz. 485, 254 P. 1060 (1927) rejected the Norton doctrine and held instead that:

"* * * it would be the height of injustice for the state to penalize, either by criminal process or civil action, one of its citizens for obeying a law which on its face was adopted in a constitutional manner, but which was, after such obedience by the citizen, held to be unconstitutional. And therefore, following the rule laid down in Lang v. Mayor[14] * * * we hold that in Arizona the citizen who obeys such a law cannot be penalized by the state for so doing." 31 Ariz. at 502, 254 P. at 1065.

The Texas Co. case involved reliance upon a Governor's veto later held unconstitutional. However, we see no meaningful

---

13. A.R.S. § 35–212 provides that: ·
   "The attorney general, under appropriate circumstances, shall bring an action in the name of the state to enjoin the *illegal* payment of state money, or if the money has been paid, to recover such money plus twenty per cent of such amount and interest and costs, to be paid into the state treasury to the credit of the fund from which the payment was made." (Emphasis added.)
   (It was the attorney general's failure to "bring an action" under this section that prompted plaintiff Campbell to sue as a taxpayer pursuant to A.R.S. 35–213. See note 5, supra.)

14. In Lang v. Mayor, 74 N.J.L. 455, 461–62, 68 A. 90, 93, 15 L.R.A.,N.S., 93 (1907) the New Jersey Court of Errors and Appeals quoted the following passage from an earlier case [State v. Carroll, 38 Conn. 449]:
   "Every law of the Legislature, however repugnant to the Constitution, has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and, if thought unconstitutional, resisted, but must be received and obeyed as to all intents and purposes law until questioned in and set aside by the courts. This principle is essential to the very existence of order in society."

distinction between reliance upon the acts of the executive and legislative branches; indeed, the Texas Co. result was bottomed on analogy between the presumed validity of an executive veto and a legislative act.

Significantly, the United States Supreme Court itself retreated from the broad pronouncement in Norton when it stated in Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940) that:

"The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to the invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private, and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified." [15]

■■ The reasons for adhering to the view that citizens are entitled to rely upon an enactment of the legislature until repealed or declared unconstitutional are as cogent today as in 1927 when the Texas Co. case was decided. However desirable the total nullity doctrine of Norton may be from the standpoint of symmetrical jurisprudence it does not conform to reality. For a statute, until legislatively or judicially excised, is an operative fact which cannot be ignored. This court presumes every legislative act constitutional and indulges in every intendment in favor of its validity. Hudson v. Kelly, 76 Ariz. 255, 259, 263 P.2d 362, 364 (1953). No penalties should be visited upon the citizenry for doing likewise.

### III *Good Faith Test*

Plaintiff further insists that the defense of good faith reliance on a duly enacted statute cannot be invoked by the defendant-

15. This observation was made by Chief Justice Hughes after citing Norton v. Shelby County and remarking that: "It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications." 308 U.S. at 374, 60 S.Ct. at 318. The Court went on to hold in Chicot that a federal district court decree in a bond readjustment proceeding was res judicata and could not be collaterally attacked notwithstanding

legislators because "here the very recipients of the money are the ones who voted it to themselves." To support this contention plaintiff advances the decision of a Pennsylvania Superior Court .in Appeals of Loushay, 169 Pa.Super. 543, 83 A.2d 408 (1951). In Loushay the court sustained a county auditors' report which surcharged certain county commissioners for amounts they had paid themselves (for expenses) pursuant to a statute which the court in the same decision declared unconstitutional. The Superior Court rejected the commissioners' defense of payment in good faith reliance upon a statute subsequently held unconstitutional. Instead the court said that such a rule:

> "* * * has no application where the payment later declared invalid was made out of public funds to the public officials themselves as compensation or fees, and not to third parties." 169 Pa.Super. at 552, 83 A.2d at 413.[16]

▉ Whatever might be the rule were county commissioners (supervisors) involved, the Loushay rationale is inapplicable where, as here, members of the legislature are accused of causing as well as receiving illegal payments. The good or bad faith of these legislators in voting to enact the statute exempting themselves from A.R.S. § 35–181 *cannot* be inquired into by this or any other court in Arizona. "It is not for us to say that the legislature did not act properly." Garvey v. Trew, 64 Ariz. 342, 347–48, 170 P.2d 845, 848, cert. denied, 329 U.S. 784, 67 S.Ct. 297, 91 L.Ed. 673 (1946). That power is reposed in the voters alone. This principle, derived as it is from the fundamental concept of the separation of powers, restricts our inquiry solely to the *receipt* by these legislators of the monies involved.

In State for Use and Benefit of Lawrence County v. Hobbs, 194 Tenn. 323, 250 S.W.2d 549 (1952) the Tennessee court assumed that certain private acts were unconstitutional. Nonetheless, in the absence of a charge of bad faith, a demurrer to a bill seeking recovery of salary payments to a county clerk and master pursuant to such private acts was held to have been properly sustained. And in Wichita County v. Robinson, 155 Tex. 1, 276 S.W.2d 509 (1955) the Supreme Court of Texas ruled that certain payments to a county

---

that the statute under which the district court had acted was subsequently declared unconstitutional.

16. On appeal the Pennsylvania Supreme Court affirmed on other grounds and without deciding the constitutionality of the statute involved. In dicta, however, the court did note that: "The rule applicable to a situation such as here exists, is that payments made out of public funds by public officials *to themselves* as compensation or expenses, under an authorizing statute which is subsequently declared unconstitutional or inapplicable or void, may, because of public policy, be recovered by the County." (Emphasis original) 370 Pa. 453, 459, 88 A.2d 793, 795–796 (1952).

tax assessor-collector could not be recovered by the county after the statute authorizing the method of payment was declared unconstitutional. The court stated at 155 Tex. 13, 276 S.W.2d 516 that "all parties acted in good faith and we think it would be inequitable under the circumstances here to require the respondent to repay the compensation so paid to him."

■ There is no doubt but that during the times in question defendant-legislators were entitled to reimbursement for their necessary expenses during the legislative sessions. Thus, as in Wichita, the defect in the payments involved goes to the *manner* of payment only.[17] Decisions such as Austin v. Barrett, 41 Ariz. 138, 16 P.2d 12 (1932), which involved payments in *excess* of those authorized by law, are therefore not controlling. Plaintiff does not allege that the monies here sought to be recovered were *received* by the legislators in bad faith. Accordingly, and also for the reasons stated in section II of this opinion, Count II in plaintiff's complaint failed to state a cause of action.

■ Although we have herein previously indicated that the trial court exceeded its jurisdiction in entertaining the suit against the state auditor the following remarks are deemed appropriate. On numerous occasions the auditor has contested payment of claims against the state on the ground that the authorizing statute was unconstitutional. See e. g., Cockrill v. Jordan, 72 Ariz. 318, 235 P.2d 1009 (1951). And this court has stated that before approving payment of a claim the auditor *must* "satisfy himself * * * that the [appropriation] Act has been regularly and constitutionally adopted * * *." Hudson v. Kelly, 76 Ariz. 255, 264, 263 P.2d 362, 367 (1953). But because the auditor has the duty to scrutinize and the standing to contest the constitutionality of a legislative enactment does not mean that failure to question a statute in court automatically renders the auditor liable for payments made thereunder before the act is adjudged contrary to the Constitution. Good faith reliance is the test for the auditor as well as for anyone else. Cf., Frohmiller v. Board of Regents of University, etc., 64 Ariz. 362, 171 P.2d 356 (1946); Proctor v. Hunt, 43 Ariz. 198, 29 P.2d 1058 (1934). See also Gordon v. Conner, 183 Okl. 82, 80 P.2d 322 (1938); Annot., 118 A.L.R. 787 (1939).

For the reasons above indicated the cause is reversed with directions to dismiss Count II of plaintiff's complaint.[18]

---

17. Count I of plaintiff's complaint, alleging *excessive* expense reimbursements to these Maricopa County legislators, is not before this court.

18. Because of the method of disposition of this cause appellants' contention regarding the "curative act" of March 20, 1958 will not be discussed.

**206**

BERNSTEIN, C. J., and JENNINGS and LOCKWOOD, JJ., concur.

STRUCKMEYER, Justice (concurring).

I fully concur in the decision in this cause and in its disposition. However, by so concurring I do not wish it to be implied or inferred that I am of any other opinion than as expressed in my dissent to Giss v. Jordan, 82 Ariz. 152, 309 P.2d 779.

LOCKWOOD, Justice (specially concurring).

I concur in the decision and disposition of this case and also in the expression of Justice STRUCKMEYER regarding Giss v. Jordan, supra.